489 So.2d 461 (1986)
Everette WILLIAMS
v.
STATE of Louisiana, Office of Risk Management.
No. 85-42.
Court of Appeal of Louisiana, Third Circuit.
May 22, 1986.
David Lafargue, Marksville, for defendant-appellant.
Gilda Small, Marksville, for plaintiff-appellee.
Before KLIEBERT, BOWES and GRISBAUM, JJ. Pro Tem.
THOMAS J. KLIEBERT, Judge Pro Tem.
The State of Louisiana (Office of Risk Management), defendant-appellant, brings this suspensive appeal of a judgment awarding workman's compensation benefits to Everette Williams, plaintiff-appellee for total and permanent disability from an injury to his right arm. We affirm.
Plaintiff worked as a guard at the State Prison at Angola. His arm was injured on November 2, 1982 when it was hit by an inmate with a belt having two padlocks on it. At the time, plaintiff was attempting to break up a fight between two inmates. *462 Following the injury, plaintiff was brought to the Angola Hospital, treated and told to return to work. This he did for approximately two months. Since he continued to sustain pain and swelling of the arm, plaintiff continued to seek medical help which extended to some ten physicians over a two year period.
At trial the litigants stipulated plaintiff was injured while working within the course and scope of his employment, had been paid compensation benefits of $199.00 per week from January 16, 1983 until January 17, 1984 for a total of $10,149.00, and that medical expenses of $17,021.20, which included three hospital admissions, had been paid on his behalf. Thus, the central issue at trial was whether plaintiff was totally and permanently disabled following a sympathectomy operation in July of 1983.
The depositions of Dr. Darrel Henderson, a plastic and reconstruction surgeon; Dr. Shannon Turney, a thoracic and cardiovascular surgeon; Dr. James Domingue, a neurologist, and Dr. Sidney Dupuy, a psychiatrist, all submitted by the defendant, and of Dr. William Cloyd, a psychiatrist and Jose Garcie Oller, a neurosurgeon, both submitted by plaintiff, were introduced in evidence in lieu of their appearance at trial. Testimony in person was given by plaintiff and his friend, Brent Jackson, on plaintiff's behalf, and by Mrs. John Hook, claims adjuster, and Mr. John Thompson, an investigator, on defendant's behalf. The trial court found plaintiff was totally and permanently disabled as a result of substantial pain, inability to move his right arm and resulting chronic post-traumatic stress disorder with anxiety and depressive hypochondriacal features. Based on his finding, he awarded to plaintiff weekly compensation benefits of $199.00 per week from the date of the accident and continuing during the entire period of his disability, with interest on unpaid installments and a credit for any week plaintiff received wages or weekly compensation benefits. He also ordered payment of all medicals and medical travel expenses incurred as a result of the accident up to the statutory maximum.
On appeal defendant alleges there was insufficient evidence for the trial court to conclude plaintiff could not return to his former employment because of substantial pain or that a mental disorder was causing paralysis of plaintiff's right arm. Alternatively, defendant contends Dr. Jose Garcia Oller's examination was for trial preparation as opposed to medical treatment and the $700.00 charge for same was excessive, consequently defendant should not be obligated to pay this as medical costs.
Plaintiff continued to work for about two months following the injury. When visits with Dr. McCann, a general practitioner, and Dr. Waldman, an orthopedic specialist, were not relieving plaintiff's complaints of pain, and a cold sweaty right arm and shoulder, plaintiff went to see Dr. Henderson who diagnosed plaintiff's condition as a severe case of Reflex Sympathetic Dystrophy. This is a term applied by the medical profession to a group of unusually painful disorders associated with injuries to the nerves. Dr. Henderson defined it as "a condition wherein there is an oversupply [of blood] to the sympathetic nervous system which is firing electrical impulses much more frequently to an area than it should and pain results." Injury to this nervous system results in a burning type pain, excessive sweating and causes swelling of the affected limb with changes in the texture of the skin. All doctors believed Dr. Henderson's original diagnosis of Reflex Sympathetic Dystrophy was correct.
In July 1983 plaintiff was admitted to the hospital and a sympathectomy was performed by Dr. Turney. This consisted of opening the chest cavity, spreading the ribs apart and moving the lungs aside, in order to reach the cervical spine and clip the Sympathetic Nerves leading to the right arm. Notwithstanding the surgical intervention, plaintiff continued to complain of pain.
Four months later, in November 1983, plaintiff was readmitted to the hospital and while there underwent a series of tests by Dr. Domingue and Dr. Dupuy. These doctors *463 stated they could find nothing organically wrong with the plaintiff. Nevertheless, plaintiff continued to complain of pain in the head, blindness of the right eye, pain in the neck, chest and abdomen, paralysis of the right upper extremity, and weakness of the right lower extremity. Due to these continued complaints he was referred to Dr. Jose Garcia Oller and Dr. William Cloyd. Although all the doctors agreed as to plaintiff's original problem and disability, they were in disagreement as to the extent of the plaintiff's disability at the time of trial.
Dr. Henderson concluded plaintiff could have been exaggerating his complaints of pain and other problems since he and Drs. Domingue and Dupuy could find nothing organically wrong with him. Nevertheless, Dr. Henderson testified plaintiff had a 10% to 15% total disability rating without considering any disability from the operation or from substantial pain. Additionally, he said his view of plaintiff as a possible malinger was based on the fact he had never heard of anyone complaining of problems with his chest, abdomen and leg after a sympathectomy. We note, however, Dr. Jose Garcia Oller and Dr. Turney testified those problems were a direct result of the operation.
Dr. Jose Garcia Oller testified that a loss of smell and a "drooping eyelid" causing blurred vision were disabilities resulting from a sympathectomy. Dr. Turney, Dr. Henderson and Dr. Garcia Oller all found these incapacities present in plaintiff. Additionally, Dr. Garcia Oller believed plaintiff was totally disabled.
Dr. William Cloyd, a psychiatrist, saw plaintiff on numerous occasions from January through March of 1984. He testified plaintiff was 100% disabled resulting from a psychological overlay which enhanced plaintiff's pain. This post-traumatic stress disorder produced severe anxiety and depressive hypochondriacal features. Both Dr. Garcia Oller and Dr. Cloyd believed plaintiff could not engage in any kind of gainful employment. Dr. Turney testified there is no disability rating one would normally give in a post-sympathetic situation for a person who performs manual type labor. Dr. Dupuy testified that he was unable to detect any significant depression and felt on the basis of his examination that plaintiff had no psychiatric disorder.
Defendant's investigator testified that he saw plaintiff using his right arm. However, plaintiff denied he was the person pictured in the photographs. No positive identification could be made from the photos taken by the investigator.
Under our compensation statute,[1] LSA-R.S. 23:1221(2) and the jurisprudence formed thereunder, an employee who incurs a physical impairment from a job related injury and who cannot engage in any employment without suffering substantial pain is totally and permanently disabled and is entitled to permanent disability benefits. Wilson v. Ebasco Services, Inc., 393 So.2d 1248 (La.1981); Walker v. Gaines P. Wilson & Son, Inc., 340 So.2d 985 (La. 1976). Moreover, it is settled law that a neurotic disability which results from an accident within the course and scope of plaintiff's employment is compensable. See Thomas v. St. Patrick's Hospital, 276 So.2d 749 (3rd Cir.1973). Hence, under the workman's compensation statute, a claimant is entitled to compensation if he is physically disabled or has a mental condition which leads him to believe he is disabled.
Here the trial judge concluded the plaintiff was totally and permanently disabled. Although the record can support other views, we cannot say the trial judge erred in reaching his conclusion. The plaintiff's testimony and that of Dr. Garcia Oller and Dr. Cloyd amply support the trial judge's conclusion. Additionally, we note plaintiff was referred to Dr. Garcia Oller by Dr. Byron McCann after Dr. Henderson suggested plaintiff seek another doctor's opinion. Given these facts, we cannot say the trial judge erred in concluding Dr. Garcia Oller's medical fees were not necessary *464 medical treatment expenses. Further, although the fee of $700.00 appears to be high, we note that the court's award of $75.00 for appearance and giving of testimony at a deposition is low. Hence, in fairness, any decrease of the medical fee would have to be offset by an increased fee for the appearance at a deposition.
For the reasons stated therefore we affirm the trial court's judgment. Costs of the appeal are to be borne by the appellant.
AFFIRMED.
NOTES
[1] Applicable statute is the one in effect as of the time of the injury, i.e., November 1982.