617 So.2d 1278 (1993)
Ralph CHEVALIER, Plaintiff-Appellee,
v.
L.H. BOSSIER, INC., et al., Defendant-Appellant.
No. 92-888.
Court of Appeal of Louisiana, Third Circuit.
May 5, 1993.
*1279 Katherine Marie Loos, Lafayette, for L.H. Bossier, Inc. et al.
Joseph Texada Dalrymple, Robert G. Nida, Alexandria, for Ralph Chevalier.
Before DOUCET, YELVERTON and COOKS, JJ.
DOUCET, Judge.
This is an appeal by a statutory employer and its insurer from a judgment of the Office of Worker's Compensation in favor of a worker's compensation claimant. The claimant, Ralph E. Chevalier, was initially injured on November 26, 1985 while working for L.H. Bossier, Inc. (L.H. Bossier) as a truck driver.
The accident occurred when Mr. Chevalier drove his eighteen wheel dump truck onto the shoulder of the highway to avoid a headon collision with another vehicle. When he did so, the load of asphalt that he was carrying shifted, causing the truck to overturn completely. After overturning, the truck slid across the highway on its roof and came to rest on the opposite side of the road against some trees.
Mr. Chevalier attempted to return to work approximately three months after the accident, but he was unable to continue driving, because of pain in his right shoulder, and later, his back. He eventually underwent surgery on his shoulder and lower back and subsequently developed rheumatoid arthritis. He also severely sprained his left ankle when his back gave out on him on one occasion. He has not worked since his attempt to return to his former employment shortly after the accident.
The current dispute began when Mr. Chevalier sought a second opinion from physicians at the Tulane Medical Center in New Orleans, Louisiana. The worker's compensation insurer, Reliance Insurance Company of Illinois (Reliance), initially authorized the evaluation but subsequently refused to pay for the examination and reports of the physicians or the costs of the diagnostic procedures that they ordered. *1280 Mr. Chevalier filed a disputed claim with the Office of Worker's Compensation, and L.H. Bossier and Reliance responded by seeking the termination of his weekly benefits and his right to payment of certain medical expenses.
Following a hearing, the Office of Worker's Compensation rendered a judgment awarding Mr. Chevalier comprehensive relief, including:
(1) $7,440.25 in medical expenses associated with his evaluation by physicians at Tulane Medical Center;
(2) $5,000.00 in attorney's fees for the Reliance's arbitrary and capricious refusal to pay for the examinations and reports of the physicians at Tulane Medical Center;
(3) A declaration that the medical expenses associated with his rheumatoid arthritis are compensable under the worker's compensation laws of the State of Louisiana;
(4) An order that L.H. Bossier and Reliance pay for all medications related to the treatment and care of his accident related injuries, including any and all medications for the treatment of his rheumatoid arthritis;
(5) An order that L.H. Bossier and Reliance pay for a complete evaluation by Dr. Phillip Osborne's Pain Clinic in Shreveport, Louisiana; and
(6) A declaration that he is entitled to benefits for temporary, total disability.
On appeal, L.H. Bossier and Reliance have assigned as errors the granting of each element of this relief. The standard of our review of the hearing officer's conclusions is the manifest error-clearly wrong standard. Woods v. Borden's Perkins Division, 610 So.2d 219 (La.App.3rd Cir.1992).

THE COSTS OF THE EVALUATION
Dr. Stanley Foster, an orthopedic surgeon from Alexandria, Louisiana, has treated Mr. Chevalier for orthopedic problems since May of 1988. In August of 1990, Mr. Chevalier discussed with Dr. Foster the possibility of being evaluated by physicians at Tulane Medical Center for the chronic pain that he was experiencing. Dr. Foster agreed that another evaluation might be beneficial and made the referral.
Reliance initially refused to authorize a second evaluation but subsequently gave its consent. On August 20, 1990, Katherine M. Loos, counsel for Reliance, sent a letter to Mr. Chevalier's attorney, Robert G. Nida, which provided in pertinent part:
"I spoke with my client this morning who has apparently had a change of heart with regard to Ralph Chevalier being examined by a physician in New Orleans. My client advises me that he is willing to guarantee payment for an evaluation and a report concerning the physician's findings. My client is specifically not guaranteeing payment for any treatment which may be recommended until a second opinion has been obtained."
Mr. Chevalier subsequently made the four hour trip to New Orleans, Louisiana, where he was examined and evaluated by Dr. Michael Brunet and Dr. Thomas Whitecloud, III, both of whom are professors of orthopedic surgery. The doctors felt that additional diagnostic testing was required to make their evaluation, and they recommended immediate hospitalization, which would permit them to perform the tests and relieve the pain that Mr. Chevalier was experiencing from the trip. However, when Reliance was contacted, its adjuster refused to authorize the testing. In order to avoid a second painful trip to New Orleans, Mr. Chevalier furnished proof of hospitalization insurance through his wife's employment and was admitted for the testing.
The hearing officer determined that Reliance is liable for the costs of the evaluation by the New Orleans physicians. Her reasons for that conclusion were explained in her written Notice of Judgment, as follows:
"Mr. Nida's letter of August 3, 1990 to Ms. Loos clearly states a request for authorization of payment to `these physicians in New Orleans'; Mr. Barousse initially said he would authorize this if Dr. Foster made a referral and then tried to back out of his agreement when the referral *1281 was given. There is no evidence to suggest that Mr. Nida had anything to do with the request to get a second opinion from New Orleans and Dr. Foster seemed to wholeheartedly agree. As the letter of August 20, 1990 from Ms. Loos to Mr. Nida guarantees payment for an evaluation and report, and it can be presumed that the insurer has had enough experience with orthopedic evaluations to realize that tests are going to be needed and did not refuse in its guarantee to pay for tests, only treatment; the bills for tests, evaluation and report are to be paid."
Reliance argues on appeal that the hearing officer erred in finding that its attorney authorized diagnostic testing in her letter of August 20, 1990. Reliance further argues that Mr. Chevalier is precluded from recovering the expenses of the testing, because its adjuster made it clear that Reliance did not consent to the testing prior to Mr. Chevalier's admission to the hospital. The latter argument is based on LSA-R.S. 23:1142, which currently imposes a ceiling of $750.00 on the expenses that can be incurred for nonemergency diagnostic testing and treatment without the approval of the payor.
At the time that this claim arose, LSA-R.S. 23:1142(B) did require prior agreement or approval of medical expenses, but the $750.00 limit was not in effect. The applicable statute is the one in effect at the time of the claimant's injury. Hutchinson v. Livingston Wood Products, 562 So.2d 883 (La.1990); Villagomez v. Howard Trucking Co., 569 So.2d 1006 (La.App.3rd Cir. 1990); Ramos v. Southwest Louisiana Electric Membership Corp., 536 So.2d 713 (La.App.3rd Cir.1988); Miller v. J.P. Owen Co., Inc., 509 So.2d 1038 (La.App.3rd Cir. 1987), writ denied 514 So.2d 455 (La.1987); Williams v. State, 489 So.2d 461 (La.App. 3rd Cir.1986).
The hearing officer found that the actions of Reliance's adjuster in refusing to guarantee payment when Mr. Chevalier was admitted to the hospital amounted to a withdrawal of its earlier agreement to pay. We cannot say that she was clearly wrong in doing so.
It is not uncommon for treating physicians to seek consultations from other doctors, and our jurisprudence recognizes that a physician who is treating a worker's compensation claimant may seek such consultations as are medically necessary to determine the claimant's course of treatment for work-related injuries. Whittington v. Rimcor, Inc., 601 So.2d 324 (La.App.2nd Cir.1992); Robinson v. State Farm Fire & Casualty Insurance Co., 404 So.2d 306 (La.App.3rd Cir.1981), writ denied 409 So.2d 637 (La.1981).
In Robinson, supra, this Court held:
"Unlike the situation where a plaintiff is sent to a physician by his own attorney simply for evaluation for trial, Robinson was referred by Dr. Sills, the attending physician, to Dr. Rambach presumably for his evaluation and recommendations because of plaintiff's additional complaints. It is clear that this examination was not made simply in connection with litigation. We believe it was a necessary medical expense for which the employer is liable." Id. 404 So.2d at 308.
That reasoning applies in the present case. The hearing officer correctly noted that Mr. Chevalier's attorney apparently had nothing to do with the referral, which was made by his treating physician, Dr. Foster. Whether or not the idea for the referral originated with Mr. Chevalier is immaterial. Dr. Foster, in the exercise of his professional judgment, agreed that the consultation might provide guidance for the treatment of Mr. Chevalier's persistent complaints of pain.
On appeal, Reliance concedes that it authorized the evaluation by the physicians at the Tulane Medical Center and does not seriously contest that it was medically necessary. Its arguments are confined to the diagnostic testing, which it claims were not shown to have been necessary.
The record contains letters from Drs. Whitecloud and Brunet to Dr. Foster explaining the diagnostic tests that were performed and the reasons why they were deemed necessary. Copies of the reports *1282 from the tests are attached. The consulting physicians who ordered the tests clearly felt that they were necessary, and there is no contradictory evidence in the record.
Reliance's claims adjuster testified that he refused to authorize the tests because Mr. Chevalier had undergone an extensive battery of tests six to seven months earlier. However, if there was any duplication of earlier testing procedures, there is no evidence of it in the record. The claims adjuster apparently did not make any attempt to learn what tests were being ordered, nor did he suggest that the results of prior tests might be used in lieu of new studies.
Diagnostic tests which treating or consulting physicians deem necessary in order to make a definitive diagnosis or recommendation for treatment are part of the necessary medical treatment which the employer and its insurer are obligated to furnish to injured workers. Stelly v. United Parcel Service, 600 So.2d 156 (La.App.3rd Cir.1992); LeDoux v. Robinson, 568 So.2d 244 (La.App.3rd Cir.1990).
Reliance argues that the costs of the diagnostic procedures are nevertheless not recoverable, because the physicians who were consulted did not render treatment. It is well-settled that employers and their insurers are not obligated to pay for evaluations requested by the employee's attorney for purposes of litigation. Price v. Fireman's Fund Insurance Co., 502 So.2d 1078 (La.1987); Benoit v. Giant Rentals, Inc., 458 So.2d 668 (La.App.3rd Cir.1984); Butts v. Insurance Co. of North America, 352 So.2d 745 (La.App.3rd Cir. 1977), writ denied 354 So.2d 206 (La.1978). However, in the present case, the evidence does not indicate that the evaluation was performed for the purposes of litigation.
Mr. Chevalier and Dr. Foster both testified that Mr. Chevalier's attorney had no part in the referral. Furthermore, Mr. Chevalier offered convincing reasons for not undergoing the treatment recommended by the New Orleans physicians. Reliance and L.H. Bossier have refused to pay for the treatment, and Mr. Chevalier does not have the resources to do so. In addition, after reviewing the reports and recommendations, Dr. Foster suggested that Mr. Chevalier undergo treatment at Dr. Phillip Osborne's Pain Clinic in Shreveport, Louisiana, before consenting to additional surgery.
In light of the particular facts of this case, we do not find that the hearing officer was clearly wrong in holding Reliance liable for the testing performed by the New Orleans physicians. If Reliance had any legitimate grounds for resisting payment for additional testing, it failed to prove them.
The confusion which surrounded the evaluation and testing is certainly undesirable and to be avoided, but it does not appear to be in any way attributable to Mr. Chevalier or his attorney. Reliance agreed to the evaluation, and its adjuster acknowledged that he anticipated some diagnostic testing, such as x-rays, when he authorized it. Although the refusal to pay for additional treatment was made clear, it was not until Mr. Chevalier made the painful trip to New Orleans that Reliance announced any additional limitations on the scope of the procedure. In view of its failure to rebut the proof of medical necessity for the additional tests, we find no error in imposing liability on Reliance for their costs.

THE AWARD OF ATTORNEY'S FEES
The hearing officer found that Reliance was arbitrary and capricious in refusing to pay for the evaluation and report. She gave the following reasons for that finding:
"The insurer is found to have been arbitrary and capricious only for its refusal to pay for the evaluation and report as they should have tendered funds for same without hesitation. I feel the breakdown on the bills allow (sic) the insurer to easily see the amount for the doctor evaluation and report. I am not persuaded by the argument of the high cost of the services as there was no testimony that the cost was not the usual and customary cost for same in New Orleans. There is no penalty for this behavior except in an award of attorney's *1283 fees; and the same is set at $5,000.00."
On appeal, Reliance argues that it should not be liable for attorney's fees, because it should not be obligated to pay what it characterizes as "extensive and unnecessary diagnostic testing." For the reasons stated above, we cannot agree that the testing was unnecessary, and we find that Reliance was properly held liable for the costs associated with them.
Reliance also argues that its adjuster had good reason for declining to authorize payment for the tests, because Mr. Chevalier had undergone diagnostic testing several months earlier. Inasmuch as the adjuster apparently made no effort to learn what new tests were being ordered, nor did he investigate to determine whether the earlier tests could be used, we cannot agree that this constituted a good reason for refusing to authorize the additional tests. Furthermore, the hearing officer did not impose sanctions because of the failure to pay for the tests. The sanctions were imposed, because Reliance failed to pay the physicians' fees for their examinations and reports.
When questioned about why he didn't pay for the examinations and reports, the adjuster testified that he had not been provided with a breakdown of the expenses, which would permit him pay for those charges without paying for the testing. The hearing officer found the statements provided by Mr. Chevalier's attorney sufficient for that purpose, and after reviewing those documents, we cannot say that she was clearly wrong. Consequently, we do not find manifest error in the award of attorney's fees.

TREATMENT FOR RHEUMATOID ARTHRITIS
The hearing officer gave the following reasons for her finding that Mr. Chevalier's rheumatoid arthritis was related to the automobile accident:
"Both Dr. Foster, claimant's treating orthopedic surgeon and Dr. Miguel Garcia-Caro, claimant's treating rheumatologist, have directly related claimant's condition to his on-the-job auto accident. Both physicians stated that although the arthritic condition is not caused by trauma and that the claimant would have developed arthritis anyway, the severe trauma that he sustained to his total body, especially his shoulder, accelerated the arthritis and worsened same. The medical history indicates a consistent problem with pain from the date of the accident right up to trial. The tear that Mr. Chevalier sustained to his rotator cuff in the right shoulder and diagnosed 6 weeks post-accident, provided the perfect setting for the entrance of arthritis."
There is ample support in the record for those findings. Reliance and L.H. Bossier did not effectively rebut the medical evidence indicating that Mr. Chevalier's work-related accident aggravated or accelerated his arthritic condition. It is well-settled that an employee is entitled to worker's compensation benefits if he proves that a work-related accident aggravated a pre-existing condition, causing disability. Johnson v. Travelers Insurance Co., 284 So.2d 888 (La.1973); Hopson v. Garner Brothers Masonry Contractors, Inc., 459 So.2d 577 (La.App.3rd Cir.1984), writ denied 462 So.2d 192 (La.1984); McCauley v. Delta Drilling, 377 So.2d 577 (La.App.3rd Cir.1979), writ denied, 379 So.2d 1102 (La.1980).
The medical testimony also indicated that treatment of the arthritis should help to reduce the pain in Mr. Chevalier's back and shoulder. Under LSA-R.S. 23:1203, an injured employee is entitled not only to all necessary medical and non-medical treatment which will help to cure his disability, but he is also entitled to all treatment that is necessary to relieve the pain which he suffers as a result of his disability. Simmons v. Louisiana Health & Human Resources, 502 So.2d 187 (La.App.3rd Cir.1987), writ denied, 503 So.2d 1017 (La. 1987); Gourdon v. Rockwood Insurance Co., 368 So.2d 1156 (La.App.3rd Cir.1979). In Simmons, supra, this Court held that the employer was liable for the costs of a weight reduction program, because the injured employee's physicians believed that *1284 the pain in her back would be reduced if she lost weight.
In light of this evidence, we find no error in the hearing officer's order that Reliance and L.H. Bossier pay the costs of treating Mr. Chevalier's rheumatoid arthritis.

THE PAIN CLINIC
Mr. Chevalier's treating physicians, Drs. Foster and Garcia, recommended that he seek treatment at Dr. Phillip Osborne's Pain Clinic in Shreveport, Louisiana. Dr. Foster apparently felt that such treatment was a viable alternative to the surgical procedure recommended by the physicians at Tulane Medical Center.
Reliance and L.H. Bossier attempted to rebut this evidence with the testimony of their expert, Dr. James C. McDaniel. Dr. McDaniel, an orthopedic surgeon summarized his views on pain clinics as follows:
"They're a joke. They are mainly used by plaintiff attorneys in litigation cases, and they've become a joke. The good pain clinics will tell you this: `When you settle your case or you finish with the secondary gain aspects of this, then you call us. If the person still wants to come to our pain clinic, then fine.' That's the approach that should be taken in someone going to a pain clinic."
The hearing officer found these and Dr. McDaniel's other remarks about pain clinics unpersuasive. After reviewing all of the medical evidence in the record, we cannot say that she was clearly wrong. Dr. McDaniel's sweeping denouncement of pain clinics for the treatment of people like Mr. Chevalier appears to be founded on a general belief that no credence can be given to the complaints of parties involved in litigation because of what he characterized as their "secondary gain motives." While he claimed that many others in the medical community share his beliefs, he cited no studies or empirical data indicating that his beliefs are based on accepted scientific principles rather than a general bias against litigants.
The physicians who have treated Mr. Chevalier do not appear to be skeptical about his complaints, although Dr. Foster indicated that the services provided by the pain clinic might be beneficial in determining whether there is a psychological component to his pain. After having worked with Mr. Chevalier for many years, these physicians are of the opinion that the pain clinic might be helpful.
It is well-settled that the treating physicians' testimony will ordinarily be given greater weight than the testimony of a physician who examines a plaintiff for diagnosis only. Martin v. Travelers Insurance Co., 546 So.2d 958 (La.App. 3rd Cir. 1989); Sepulvado v. Williamette Industries, 459 So.2d 1342 (La.App.3rd Cir.1984). In Picou v. Circle, Inc., 578 So.2d 1183 (La.App. 5th Cir.1991), the court found that a second admission to a pain clinic, which the claimant's treating physicians had recommended, was medically necessary for the treatment of his work-related injuries.
In light of these facts, we agree with the hearing officer that Mr. Chevalier has proved by a preponderance of the evidence that the services offered by the pain clinic are medically necessary for the treatment of his work-related injuries.

BENEFITS FOR TEMPORARY TOTAL DISABILITY
After having paid for the treatment of Mr. Chevalier's back injury since 1988, including the costs of back surgery, Reliance and L.H. Bossier now argue that the back injury is not related to the automobile accident in November of 1985. They also dispute the relationship between the rheumatoid arthritis and the accident, although as we stated earlier, they have not effectively rebutted Mr. Chevalier's proof that it is related.
The hearing officer apparently had no difficulty relating Mr. Chevalier's back injury to the automobile accident. She assigned the following reasons for that conclusion:
"Claimant testified that although he had experienced back pain and indeed had told Dr. Davis this, that his shoulder pain was much more severe. Dr. Davidson's notes indicate his knowledge of *1285 back problem in the Spring of 1987. Dr. Foster's deposition indicating that the pain medication and other limitations placed on the claimant by his doctors easily explains the lack of extreme pain and attention given to the back until the shoulder had improved. He also explained that the type of herniation he found and the surgery he performed was related to the accident absent any intervening factors. There has been no evidence of any intervening factors."
Reliance and L.H. Bossier make much of the fact that Dr. Foster's opinion about the cause of the back injury is dependent upon the truthfulness of the history of no intervening trauma related by Mr. Chevalier. However, this is true in almost all cases in which a doctor renders an opinion about medical causation for an injury. As the hearing officer noted, no evidence was presented of any intervening factor. Furthermore, it is clear from the hearing officer's written reasons for ruling that she found Mr. Chevalier to be credible. Her opinion was shared by all of the physicians who have treated him. Only the appellants and their expert, Dr. McDaniel, appeared to have any doubt about Mr. Chevalier's credibility.
We find no clear error in the hearing officer's finding that Mr. Chevalier's back condition and his rheumatoid arthritis are related to his on-the-job injury. Reliance and L.H. Bossier argue that we should nevertheless reverse the finding of temporary total disability, because the evidence established that Mr. Chevalier is capable of returning to work.
The appellants concede that Mr. Chevalier's doctors have placed significant restrictions on his activities. Those restrictions, together with his lack of training and his lack of a high school diploma limit his ability to find work. However, the appellants argue that despite these limitations, work that he is capable of performing is available. To support that proposition, they rely heavily upon the testimony of their vocational rehabilitation expert, Glenn M. Hebert. Mr. Hebert testified that there are a number of jobs available in the Alexandria, Louisiana area, which will enable Mr. Chevalier to earn his average pre-accident wage of $5.00 per hour.
Mr. Hebert's testimony about the availability of these jobs was contradicted by the testimony of Mr. Chevalier and wife. They testified that Mr. Chevalier personally called on all of the businesses listed by Mr. Hebert and learned that employment was not available at any of them. Furthermore, Mr. Hebert acknowledged that he had not consulted Mr. Chevalier's rheumatologist, Dr. Garcia, to determine whether he was capable of performing the jobs that he listed. He also admitted that he did not tell any of the prospective employers of Mr. Chevalier's ongoing treatment, which together with flare-ups of his arthritis might cause him to miss more work than the average employee.
Mr. Chevalier argues that the labor market survey conducted by Mr. Hebert is defective and should not be considered. The hearing officer's written reasons for ruling do not mention the labor market survey, but we note that she based her finding that Mr. Chevalier is disabled on the restrictions given by Dr. Garcia, which were not considered by Mr. Hebert. It is obvious that she did not accept Mr. Hebert's testimony that there were jobs available that Mr. Chevalier can perform.
It is not at all clear from the record that the jobs found by the vocational expert are compatible with the physical limitations suggested by Dr. Garcia. There is also a serious question about whether the jobs are in fact available. Mr. Hebert testified that he confirmed that the jobs were available, but he did not actually attempt to place Mr. Chevalier in them. Mr. Chevalier testified without contradiction that he went to apply for the jobs and was advised that there were no openings.
In addition, Mr. Hebert's opinion that jobs were available to Mr. Chevalier in Alexandria did not take into account the problems that he would experience commuting from his home in Glenmora, Louisiana. We question whether it is reasonable to expect a man suffering from chronic pain to travel 80 miles every day in order to *1286 earn minimum wage. See Kennedy v. Commercial Union Insurance Co., 572 So.2d 319 (La.App.3rd Cir.1990).
The hearing officer's finding of temporary total disability was apparently based in part on Mr. Chevalier's need for additional treatment at the pain clinic. Dr. Foster felt that the treatment offered at the pain clinic would enhance Mr. Chevalier's ability to work. We agree that the need for additional treatment is an appropriate consideration.
When an injured manual laborer is disabled from performing physical labor at the time of trial and is still undergoing medical treatment with an indefinite recovery period, but it appears reasonably certain that he will be able to engage in other gainful employment within a foreseeable period of time, he is entitled to benefits for temporary total disability. Brown v. Knost Roofing Corp., 566 So.2d 1024 (La. App. 3rd Cir.1990); Brewster v. Manville Forest Products Corp., 469 So.2d 340 (La. App.2nd Cir.1985). Mr. Chevalier clearly fits that description, and accordingly, we find no error in the hearing officer's award of benefits for temporary total disability.
For the foregoing reasons, the judgment of the Office of Worker's Compensation is affirmed at the appellants' costs.
AFFIRMED.