680 So.2d 1 (1996)
Michael H. WHITE, Plaintiff-Relator,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Respondent.
No. W95-551.
Court of Appeal of Louisiana, Third Circuit.
July 17, 1996.
Lawrence N. Curtis, Lafayette, for Michael H. White.
Preston D. Cloyd, Lafayette, for State Farm Mutual Automobile Insurance Co.
Before THIBODEAUX, SAUNDERS, PETERS, AMY, JJ., and KNIGHT[*], J. Pro Tem.
*2 THIBODEAUX, Judge.
In this petition for supervisory review, Michael White, plaintiff-relator, seeks review of a trial court judgment which granted respondent's, State Farm Mutual Automobile Insurance Company's, motion to compel and ordered White to submit to an independent medical exam by Dr. James C. McDaniel. The trial court has granted a stay of its order compelling plaintiff to submit to a physical examination pending this court's decision in this matter.
We find that the trial court erred in granting respondent's motion to compel relator, White, to submit to an independent medical exam by Dr. James C. McDaniel. We grant relator's writ application, make it peremptory and remand this matter to the trial court for the appointment of an orthopaedist in the Lafayette area other than Dr. James McDaniel.

FACTS
Relator brought this action against respondent, State Farm Mutual Automobile Insurance Company, to recover underinsured motorists benefits for injuries that he sustained on November 7, 1992, in an automobile accident in Lafayette, Louisiana. On February 2, 1995, State Farm filed a motion for physical examination, seeking an order compelling White to submit to an examination by Dr. James C. McDaniel.
Relator opposed the motion, but only to the extent that State Farm sought to have the examination performed by Dr. McDaniel. Plaintiff agreed to submit to a physical examination by any of the twelve other orthopaedic surgeons in the Lafayette medical community. He opposed an examination by Dr. McDaniel on the ground that Dr. McDaniel would simply function as an advocate for the defense, rather than satisfying any right of State Farm. Judgment was signed March 10, 1995, subsequent to the March 1, 1995 hearing, ordering relator-plaintiff to submit to a physical examination by Dr. McDaniel.
This application for supervisory writs followed. This court called the case up for a full review to determine whether the trial court correctly granted respondent's motion to compel relator to submit to a physical examination by Dr. McDaniel.

ISSUES
The following two issues are before this court:
(1) Whether a general bias against litigants by an independent medical examiner, as demonstrated by past expert testimony, is sufficient good cause to disallow an independent medical examination by that physician; and,
(2) Whether an underinsured motorist carrier breaches its duty of good faith and fair dealing to its insured when it uses a provision of its insurance contract to compel the insured to submit to an independent medical examination for the sole objective of securing expert testimony for litigation purposes, rather than as a means of obtaining information needed to fairly and equitably adjust the insured's claim.
Did the trial court abuse its discretion in ordering plaintiff to submit to a physical examination by Dr. McDaniel? In other words, did the plaintiff show that sufficient good cause exists for the court to disallow the independent medical examination of plaintiff by Dr. McDaniel because of a demonstrated general bias against injured litigants?
At the trial court level, Mr. White did not oppose being examined by an orthopaedist and did not seriously contend that the respondent did not have good cause for the examination. He only opposed the examination being performed by Dr. James McDaniel who has been historically inclined to a biased, prejudicial, and insupportable predisposition in favor of insurance companies and other defendants.
The trial court has wide discretion in determining whether an independent medical examination should be ordered. See Walker v. Marcev, 427 So.2d 678 (La.App. 4 Cir.), writ denied 433 So.2d 182 (La.1983). In this case, the trial court did not find that Dr. McDaniel would act improperly. Therefore, this panel must determine whether this finding constitutes an abuse of discretion.
*3 The general rule regarding medical examination of a party is governed by La.Code Civ.P. art. 1464, which states as follows:
When the mental or physical condition of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician or to produce for examination the person in his custody or legal control, except as provided by law.... The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by who it is to be made.
As a general rule, the defendants have the right to send the plaintiff to an orthopedist of defendant's choice unless a specific, personal bias or prejudice can be shown. However, there are occasions when a party does not have the right to a physician of his choice. See, Mansion v. Cigna, 572 So.2d 47 (La.1991). In Mansion, the supreme court, in reversing the third circuit's judgment ordering the plaintiff to submit to an independent medical examination by Dr. McDaniel, stated:
Granted. Judgment of the court of appeal is amended to permit defendant to select an orthopedist of its choice other than Dr. James McDaniel.
Id.
Therefore, La.Code Civ.P. art. 1464 does not grant the defendant an absolute right to a physician of his choice. Rather, the article only states that the court may order a party to submit to a physical or mental examination by a physician.
As a general rule, there exists a presumption that a physician in a personal injury action will conduct properly a physical examination of the plaintiff. Walker v. Marcev, 427 So.2d 678.
As stated by Judge Culpepper of this court in Simon v. Castille, 174 So.2d 660, 665 (La.App. 3 Cir.), writ denied, 247 La. 1088, 176 So.2d 145 (1965), cert. den., 382 U.S. 932, 86 S.Ct. 325, 15 L.Ed.2d 344 (1965):
Able counsel for defendant has pointed out that the premise of the argument contained in the affidavit is that all doctors retained by defendants to examine plaintiff's will act improperly. We cannot accept such a premise. It must be presumed that doctors will conduct their physical examinations properly. However, if, for good cause shown, the trial judge, in his discretion, decides that a particular doctor may act improperly, he may refuse the request for medical examination; or designate another doctor in whom the court does have confidence; or he may specify the scope of the examination; or require as a condition that plaintiff's counsel be present....
Nevertheless, that presumption can be overcome by a physician's documented, long-history of partiality. See, e.g., Simon, Id. and Walker v. Marcev, 427 So.2d 678.
Dr. McDaniel has a well-documented history of advocacy against injured litigants which constitutes, in our view, sufficient good cause to disallow him from examining an individual for the purpose of testifying in litigation. As stated in Simon v. Castille, at page 665:
However, if, for good cause shown, the trial judge, in his discretion, decides that a particular doctor may act improperly, he may refuse the request for medical examination; or designate another doctor in whom the court does have confidence;....
While this court has recognized Dr. McDaniel's expertise in the area of orthopaedic surgery, it has expressed its disdain for his biased opinions numerous times.
In Nugent v. Continental Cas. Co., 634 So.2d 406, 408 (La.App. 3 Cir.1994) this court noted:
This includes the unfortunate comments of Dr. McDaniel concerning attorneys, whom he believes cause patients to complain of nonexistent injuries for the sake of litigation.... The implication of his comments did not reflect directly on the Nugents but rather on Dr. McDaniel's apparent disdain for some aspects of the legal profession.
*4 The Nugent court continued on page 409, as follows:
This court is well aware of Dr. McDaniel's reputation for testimony that often crosses the border into advocacy. See, Chevalier v. L.H. Bossier, Inc., 617 So.2d 1278 (La.App. 3d Cir.1993). By his testimony in the record, before us, we see it is a reputation well-deserved. Moreover, his opinion is based on only one examination of Ms. Nugent. For that reason, it is entitled to less weight than that of her treating physicians. Chevalier, supra; Fontenot v. T.L. James & Co., Inc., 563 So.2d 909 (La.App. 3d Cir.1990).
Dr. McDaniel was again the subject of comment by this circuit in Francis v. Brown, 95-1241 (La.App. 3 Cir. 3/20/96), 671 So.2d 1041. There, we addressed the issue of the proper jury instruction in distinguishing the weight to be given a treating physician as opposed to a physician hired by the defendant to evaluate the plaintiff and testify on behalf of the defendant at trial. Francis quoted Iorio v. Grossie, 94-846, p. 3, n. 1 (La.App. 3 Cir. 10/4/95), 663 So.2d 366, 369, as follows:
We are well aware of Dr. McDaniel's well deserved reputation for testimony that crosses the line into advocacy. In Iorio, 663 So.2d 366, a case strikingly similar to the case sub judice, this court discussed Dr. McDaniel's propensity as a witness:
"We are especially concerned about the jury's deference to Dr. McDaniel, in light of his obvious bias against litigants in general and personal injury plaintiff's with soft tissue injuries, in particular,... Dr. McDaniel's editorial comments while testifying imply that only those who have their legs cut off or need back surgery, and the like, have legitimate injuries, indicate that Dr. McDaniel is predisposed to dismiss them or, perhaps, any injury short of amputation, as mere `bellyaching,' or even deliberate falsification of symptoms. His expression of his views does not appear to be `of the moment,' but rather entrenched and pervasive in his thinking and analysis, as he has displayed a pattern of such bias in other cases before this court...."
and concluded at page 12:
"We find Dr. McDaniel's testimony to be of little value in this case, primarily because of his predisposition to plaintiff bias...."
Dr. McDaniel's bias "... appears to be founded on a general belief that no credence can be given to complaints of parties involved in litigation because of what he [characterizes] as their `secondary gain motives'." Chevalier v. L.H. Bossier, Inc., 617 So.2d 1278, 1284 (La.App. 3 Cir.1993). His unfortunate beliefs are based on "a general bias against litigants." Id.
Recently, in Rowe v. State Farm Mutual Automobile Insurance Company, 95-669, pp. 7-8 (La.App. 3 Cir. 3/6/96), 670 So.2d 718, writ denied, 96-0824 (La. 5/17/96), 673 So.2d 611, we listed numerous cases from this circuit alone which reveal how Dr. McDaniel consistently testifies that personal injury plaintiffs are not injured. His position invariably is contrary to the testimony of their treating physicians.
As an additional basis upon which to grant this writ and remand the matter to the trial court, we are aided by the United States Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993),[1] where the court held that, in admitting expert testimony, the court should perform a gatekeeping function to decide whether the expert evidence or testimony is reliable and relevant.
Reliability and relevance are the cornerstones for the admission of expert testimony under both Daubert and Foret. Under the Daubert analysis, the court must determine whether a jury or a judge will receive appreciable help from the testimony of the tendered expert.
The expert testimony must undergo the following scrutiny:
*5 (1) Is the expert proposing to testify to actual "`scientific, technical or other specialized knowledge'" rather than merely "`subjective belief or unsupported speculation'" or "subsidized speculation?" See Rowe at 729. The testimony must be derived from this scientific method, i.e., it focuses on a methodology, and not on the conclusions generated by the expert;
(2) The testimony presented must be "scientifically valid." In other words, the proposed testimony must be supported by "good grounds" and must be scientifically valid and reliable. This validity and reliability is determined by the following proposed factors:
a) "Has the technique or theory been tested?"
b) "Has it been subjected to peer review and publication?"
c) "Is there a known or potential rate of error?"
d) "Has it been generally accepted?;"
(3) The court must then determine whether the expert testimony, even if reliable, is helpful in understanding the evidence or in determining a fact and issue. La.Code Evid. art. 702-703; and,
(4) Finally, the court must determine whether, even if scientifically reliable and helpful, the potential for unfair prejudice outweighs its probative value? La.Code Evid. art. 402-403. See also Clement v. Griffin, 91-1664 (La.App. 4 Cir. 3/3/94), 634 So.2d 412, writ denied, 94-0717 (La. 5/20/94), 637 So.2d 478.
As stated by this court in Rowe, 670 So.2d at 724-725:
The importance to any litigant of cross-examination of a crucial expert witness cannot be overstated. The `expert is generally a person of high intelligence, experienced in expressing his ideas persuasively, and extensively more knowledgeable about his field than the cross-examiner.' More importantly, in instances where the basis of an expert opinion (whether iterated by a charlatan or a prince) is beyond the common knowledge of the jury, the jury can be deprived of the ability to objectively and rationally evaluate the merit of the expert's opinion. It is precisely in such instances that a retained expert's `apparent objectivity' can carry `undue weight' with the jury. (citations omitted).
Thus, precautions must be taken lest a retained expert's testimony, `dressed up and sanctified as the opinion of an expert,' be permitted to unduly influence the jury. These precautions include enabling parties litigant to discover an expert's bias by discovery or subpoena, to present evidence of such bias to the trier of fact and, in extreme cases, to have the expert's testimony declared inadmissible. (citation omitted) (emphasis added).
In this case, we find that the general rule that a physician in a personal injury case will conduct a proper examination has been overcome by Dr. McDaniel's long history of partiality, noted numerous times by this court in previous litigation. Based upon the abundance of jurisprudence showing bias and prejudice and a documented history of advocacy against injured litigants, as well as sometimes intemperate and gratuitous attacks on other physicians, we now find that the relator has shown an abuse of discretion on the part of the trial court in granting respondent's motion to compel relator to submit to a physical examination by Dr. James McDaniel. Therefore, this writ is granted and made peremptory.

Insurer's Duty of Good Faith and Fair Dealing
Next, we must determine whether an underinsured carrier breaches its duty of good faith and fair dealing to its insured when it uses a provision of its insurance contract to compel the insured to submit to an independent medical examination for the sole objective of securing expert testimony for litigation purposes, rather than as a means of obtaining information needed to fairly and equitably adjust the insured's claim.
Relator contends that his UM insurer's request to send him to Dr. McDaniel, in particular, amounts to a breach of the duty of good faith and fair dealing which must be read into any agreement between an insurer and its insured.
*6 Louisiana Revised Statute 22:1220(A), regarding an insurer's duty to its insured, reads in pertinent part:
An insurer owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both....
Additionally, La.Civ.Code art. 1759 provides that "good faith shall govern the conduct of the obligor and the obligee in whatever pertains to the obligation." Finally, La. Civ.Code art. 1983 provides for the good faith performance of contracts, which further buttresses the policy of fair dealing. See, Bond v. Alleman, 632 So.2d 326 (La.App. 1 Cir.1993), writ denied, 637 So.2d 468 (La. 1994).
The specific contractual provision at issue herein states as follows:
The person making claim also shall:

* * * * * *
b. Be examined by physicians chosen and paid by us as often as we reasonable may require.
We find that requiring that plaintiff-relator be examined, pursuant to the above policy provision, by a physician-advocate such as Dr. McDaniel, whose irrationally biased examination results and opinions are extensively reported in the opinions of the Third Circuit Court of Appeal and the official West Reporter system, would violate the spirit, if not the letter, of the insurer's affirmative duty to deal fairly and in good faith with an insured or a claimant.
Based upon the foregoing, the plaintiff's supervisory writ is granted and made peremptory, and this case is remanded to the trial court for the appointment of an orthopaedist in the Lafayette area other than Dr. James McDaniel.
WRIT GRANTED AND MADE PEREMPTORY.
PETERS, J., concurs in the result only.
AMY, J., dissents.
NOTES
[*] Judge William N. Knight of the Thirty-First Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] The standards enunciated in Daubert were adopted by the Louisiana Supreme court in State v. Foret, 628 So.2d 1116 (La.1993).