694 So.2d 607 (1997)
Michael CLEVELAND, Plaintiff-Appellee,
v.
DELHI GUEST HOME and Louisiana Workers' Compensation Corporation, Defendants-Appellants.
No. 29506-WCA.
Court of Appeal of Louisiana, Second Circuit.
May 7, 1997.
*609 Patricia J. Delpit and Jacqueline L. Egan, Baton Rouge, for Defendants-Appellants.
James E. Ross, Jr., Monroe, for Plaintiff-Appellee.
Before NORRIS, HIGHTOWER and WILLIAMS, JJ.
NORRIS, Judge.
The employer, Delhi Guest Home, and its insurer, Louisiana Workers' Compensation Corporation (collectively, "LWCC"), appeal an order of the WCHO awarding the claimant, Michael Cleveland, compensation benefits for temporary, total disability, unspecified outstanding medical expenses and out-of-pocket expenses, an MRI and work-hardening program, penalties and attorney fees. For the reasons expressed, we reverse.

Factual background
Michael Cleveland was employed as a direct care worker at Delhi Guest Home, a nursing home for mentally retarded persons. On November 9, 1994 he was walking down the hall when a female patient ran behind him and, according to Cleveland, pounded on his upper back and brought him to the floor. Cleveland's cousin, also a Delhi Guest Home employee, subdued the patient, and Cleveland promptly reported the incident to the nurse on duty.
That day Cleveland then went to Dr. Jose Enriquez, a family doctor at Delhi Clinic, who found no objective symptoms but diagnosed a bruised mid-upper back, told Cleveland to use ice packs, Motrin and Tylenol 3 as needed for pain, and advised him not to lift heavy objects. Nine days later Cleveland returned to Dr. Enriquez with unchanged complaints; this time the doctor recommended physical therapy, which Cleveland attended. Cleveland had missed no work as a result of this incident, but he testified that he was in constant pain which was aggravated by his work duties, including helping an extremely heavy patient put on his shoes, and getting uncooperative patients in and out of the shower. Dr. Enriquez classified Cleveland's work as "heavy duty," but nevertheless released him to regular work without restrictions on December 14.
Meanwhile, Cleveland visited LSU Medical Center in Shreveport, where he had been obtaining treatment for a previous back injury of June 1993. LSU records show that on November 28 (10 days after his second visit to Dr. Enriquez) Cleveland discussed his abnormal MRI and the possibility of neurosurgery with a Dr. Burnell at LSU. The "abnormal MRI," which had been taken in August 1994 (before the instant injury) showed "prominent disk protrusion at C3-4 level with cord compression and cord edema," as well as "a right neural foramen stenosis at the C3-4 level." Cleveland testified, however, that he never disclosed to Dr. Burnell, or any LSU doctor, that he had been involved in the instant, intervening incident.
Cleveland continued to work through January 1, 1995. He testified that his neck and back pain became unmanageable by then, and that his supervisor, Mr. McDowell, had moved him into the "low group," a category of patients who need intense assistance for all matters of hygiene and daily life. Mr. McDowell testified that he had actually reduced the level of Cleveland's duties by no longer requiring him to transport his patients around the home. Delhi Guest Home records showed that Cleveland was sent home on January 1 for failing to wear the required work jacket. Mr. McDowell testified that Cleveland called in several times to say he was sick, and was terminated on January 24, 1995 for excessive, unexcused absences. At any rate, Cleveland's last day of actual work was January 1, 1995.
*610 Cleveland returned to Dr. Enriquez on January 5, still complaining of pain in his upper back at the base of his neck. He told the doctor that he had received a CT scan in Shreveport and been informed that there was nothing else to do. Dr. Enriquez still found no objective symptoms, but because of the persistence of Cleveland's complaints, referred him to Dr. Frank Cline, who had treated him prior to this incident. Dr. Cline examined Cleveland on January 10, finding his X-rays to be "unremarkable, except for degenerative changes," assessing no impairment, and finding no reason Cleveland could not return to his old job.
On January 16, Cleveland went to E.A. Conway Medical Center in Monroe, another hospital where he had received treatment prior to the instant accident. The outpatient report states that he complained of low back pain since November. Cleveland received a work excuse slip valid through January 19. Over the next several months, Cleveland treated periodically at LSU; the doctors there always noted the stenosis and other problems at C3-4 that had been diagnosed in August 1994, prior to the instant accident. In May 1995, he presented Dr. Metzger some disability forms, which the doctor refused to process. The doctor wrote that Cleveland was "without obvious deficits and seems to get around fine," and despite the diagnosis, there was "no physical evidence by which to claim him disabled." Ex. p. 105.
Cleveland filed the instant disputed claim in August 1995. At LWCC's request, he was examined in September by Dr. Carl Goodman. Dr. Goodman confirmed spinal stenosis at C3-4,[1] but noted this had been present on an MRI and CT scan taken before the instant accident. He therefore diagnosed cervical and thoracic sprain and strain, and congenital cervical spinal stenosis. He concluded that Cleveland had reached maximum medical improvement, no surgery was needed, and he could return to his prior work. Cleveland testified that Dr. Goodman advised him to return to "light duty work."
Cleveland then sought treatment from Dr. Richard Ballard, the physician of his choice. Dr. Ballard examined him on January 4, 1996, finding a "very strong guarding response," but "adequate motion of shoulder girdle" and generalized weakness that he attributed to a "deconditioned state." In his progress report, Dr. Ballard asked to see Goodman's prior MRI. He prescribed anti-inflammatory drugs and a pain killer. He also recommended "a functional capacity assessment, possibly a repeat MRI; and I think he would benefit from a work-hardening type protocol." Ex. p. 76. LWCC approved the FCE which, according to LWCC, showed Cleveland could perform light-duty work.[2] Dr. Ballard's final progress note, dated April 11, 1996, still diagnosed "chronic cervical strain" with no recommendations beyond those previously made.

Action of the WCHO
After the hearing, the WCHO issued written reasons which synopsized the facts. Noting the rule of liberal construction in compensation cases, she found that "Drs. Enriquez and Ballard indicate claimant is only able to return to light duty work." Because Cleveland's duties as a direct care worker were not light duty, she concluded that he was entitled to weekly compensation benefits. She further ordered LWCC to pay all outstanding medical expenses, to reimburse all out-of-pocket expenses incurred as a result of the accident, and to provide the repeat MRI and work-hardening program recommended by Dr. Ballard. She finally found that LWCC failed to pay benefits timely following the reports of Dr. Ballard and the deposition of Dr. Enriquez, so she assessed a penalty and attorney fees.

Applicable law
An employee is entitled to temporary, total disability benefits if he sustains a work-related *611 injury "producing temporary total disability * * * to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee at the time of the injury was particularly fitted by reason of education, training, or experience[.]" R.S. 23:1221(1)(a). When such an employee is not working, compensation for temporary, total disability is proper "only if the employee proves by clear and convincing evidence, unaided by any presumption of disability," that he is physically unable to engage in any employment or self-employment, "including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain[.]" R.S. 23:1221(1)(c). To prove a matter by clear and convincing evidence means to "demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence." Mitchell v. AT & T, 27,290 (La.App. 2d Cir. 8/28/95), 660 So.2d 204, and citations therein.
In the event of a compensable injury, the employer is obligated to furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of the State as legal. La.R.S. 23:1203 A. The claimant must prove by a "reasonable preponderance of the evidence the necessity and relationship of treatment provided by [the physician] to the work-related accident." Lynn v. Berg Mechanical Inc., 582 So.2d 902 (La.App. 2d Cir.1991), and citations therein.
The compensation statutes are to be liberally construed in order to afford coverage. Harold v. La Belle Maison Apartments, 94-0889 (La. 10/17/94), 643 So.2d 752. Nevertheless, the claimant's burden of proving his injury is not relaxed. Coats v. AT & T, 95-2670 (La. 10/25/96), 681 So.2d 1243. The WCHO's factual findings will not be disturbed on appeal unless they are clearly wrong or manifestly erroneous. Bruno v. Harbert Int'l Inc., 593 So.2d 357 (La.1992).
The employer or insurer must pay benefits within 14 days of notice of the injury and loss; failure to pay timely subjects the liable party to a penalty of 12%, "unless such nonpayment results from conditions over which the employer or insurer had no control" or "the employee's right to such benefits has been reasonably controverted by the employer or his insurer." La.R.S. 23:1201 E. The statute also provides for attorney fees in the event that failure to pay benefits is found to be "arbitrary, capricious, or without probable cause." R.S. 23:1201.2.[3] Reasonably controverting a claim means that the payor has factual or medical information of such a nature that it reasonably counters that provided by the claimant. Davis v. Jones Baldwin Music Co., 27,545 (La.App. 2d Cir. 11/1/95), 662 So.2d 803. Because these provisions are penal in nature they must be strictly construed, allowing recovery only in cases where the facts negate probable cause for nonpayment. Graham v. Georgia-Pacific Corp., 26,165 (La.App. 2d Cir. 9/23/94), 643 So.2d 352; Robichaux v. Terrebonne Parish Sch. Bd., 426 So.2d 241 (La. App. 1st Cir.1983).

Discussion
By its first assignment of error, LWCC contests the finding that Cleveland is entitled to temporary, total disability benefits. It argues that the WCHO wrongly based the award on Cleveland's complaints of pain; "working in pain" is not grounds for the benefits awarded. R.S. 23:1221(1)(c). It further argues that the record as a whole does not show, by clear and convincing evidence, that Cleveland is physically unable to engage in any employment or self-employment.
Among Cleveland's examining physicians, Drs. Cline and Goodman found that he could return to his former work, and Dr. Metzger explicitly declined to sign disability papers *612 for him. Among the treating physicians, Dr. Enriquez initially released him to light duty work and, less than one month after the accident, to his former work; and Dr. Ballard ordered a functional assessment evaluation that showed he could do light duty work. In deposition, Dr. Enriquez retreated somewhat from his opinion that Cleveland was perfectly fit to return to work, but his new position was based on a cursory review of a post-accident MRI and CT scan report which confirmed no significant change from a preaccident MRI that found Cleveland had stenosis or narrowing at C3-4, when he was working without complaints. In short, the medical evidence shows overwhelmingly that Cleveland is able to perform at least light duty work.
Cleveland testified on direct examination that because of his pain he could not perform at least "some of the things that I do there [Delhi Guest Home]." R. pp. 68-69. While the WCHO was certainly entitled to accept his subjective complaints, they lacked any medical corroboration and are thus incompetent to support an award of temporary, total benefits. Mitchell v. AT & T, supra, and citations therein.
On this evidence, the WCHO's conclusion that Cleveland is physically unable to engage in any kind of work is plainly wrong. The record supports, under a liberal construction of the statute and generous reading of the record, a conclusion that he can perform at least light duty work.[4] A worker who can perform light duty work is not entitled to temporary, total benefits. Mayeux v. Kentucky Fried Chicken, 28,163 (La.App. 2d Cir. 4/3/96), 671 So.2d 1261, writ denied 96-1133 (La. 6/7/96), 674 So.2d 966. The award of these benefits must therefore be reversed.[5]
By its second and third assignments, LWCC contests the award of "all outstanding medical expenses" and "all out-of-pocket expenses" incurred as a result of the accident of November 9. Such expenses are, of course, compensable under the statute. R.S. 23:1203 A, C. Cleveland, however, testified that LWCC never withheld authorization for any medical treatment, and there is no testimony or documentation to prove the existence of any unpaid medical, pharmacy, or miscellaneous expenses. In the absence of such evidence, the award of these items must be reversed. See Chitman v. Davison Trucking, 28,073 (La.App. 2d Cir. 2/28/96), 669 So.2d 671.
By its fourth assignment, LWCC contests the order to provide the MRI and work-hardening program "as recommended by Dr. Ballard." Necessary medical expenses are awarded if the claimant proves by a "reasonable preponderance of the evidence the necessity and relationship of treatment provided by the physician to the work-related accident." Lynn v. Berg Mechanical Inc., supra. Dr. Ballard's report of January 4, 1996 recommends "possibly a repeat MRI" (emphasis added). Ex. p. 77. The suggestion of a possible need for a repeat MRI, without any explanation why the August 1994 and December 1994 MRIs were inadequate, simply does not show the necessity for this test by a reasonable preponderance of the evidence. Similarly, aside from the isolated suggestion, there is nothing in Dr. Ballard's report, or anywhere else in the record, to show the necessity for or benefit of a workhardening protocol. This unsupported impression in a medical report, without some explanation, does not provide the reasonable preponderance required to support the award of a medical procedure. See Balsamo v. Jones, 28,885 (La.App. 2d Cir. 12/11/96), 685 So.2d 1140, and citations therein. We are therefore constrained to find the WCHO committed manifest error in ordering these procedures.
*613 By its final assignment, LWCC contests the award of penalties and attorney fees. In support, it cites the rule of strict construction of penal statutes and argues that the insurer should not be penalized for advancing close factual or legal issues to the court. Finally, it contends that the evidence as a whole shows that the insurer and employer reasonably controverted the claim.
Ms. Washington, LWCC's claims representative, testified that the decision to withhold benefits from Cleveland was based on the weight of the medical opinions of Drs. Cline, Enriquez, Goodman and Ballard, all of whom either gave Cleveland a complete release or said he could do light duty work. She also testified, and Cleveland did not deny, that LWCC authorized every requested treatment except for the repeat MRI and work hardening program suggested by Dr. Ballard. We have reviewed the doctors' reports and find that they largely support Ms. Washington's assessment of them. They are competent medical evidence which reasonably explains LWCC's withholding of benefits. Martin v. H.B. Zachry, 424 So.2d 1002 (La.1982); Mitchell v. AT & T, supra. Moreover, two of Cleveland's supervisors, Mr. Ward and Mr. McDowell, testified that Cleveland was a good, able worker after the accident, and was only terminated for excessive absences. This evidence will not support the award of penalties and attorney fees.
As noted, in his February 1996 deposition Dr. Enriquez retreated somewhat from the complete work release he had issued in December 1994, but only to the extent of saying he was leery of returning Cleveland to heavy duty work, lest he aggravate a cervical disk condition that plainly antedated the instant accident. Given the equivocal nature of Dr. Enriquez's depositionhe had not examined Cleveland in over a year and could not relate his condition to the instant accidentwe cannot say that LWCC acted arbitrarily or capriciously in relying on the overwhelming weight of all the other medical evidence. The WCHO was plainly wrong to find otherwise and to conclude that LWCC did not reasonably controvert the claim. The award of penalties and attorney fees will therefore be reversed.

Conclusion
For the reasons expressed, the WCHO's order of July 3, 1996 is REVERSED in its entirety. Costs are assessed to the appellant, Michael Cleveland, to the extent permitted by La.C.C.P. art. 5188.
REVERSED.
NOTES
[1] Dr. Goodman's report actually states the stenosis is at L3-4, but Dr. Enriquez testified this was probably a typographical error. Ex. p. 206.
[2] The actual FCE report does not appear to be included in the record; however, the WCHO stated, "It concluded that claimant was able to work at the light physical demand level." R. p. 178. Cleveland does not contest this characterization of the FCE result.
[3] The penalty and attorney fee provisions have been recently amended. La. Acts 1995, No. 1137. For accidents occurring on or after June 29, 1995, the "arbitrary and capricious" standard for imposing attorney fees will apply only when the payor discontinues benefits. It would not apply in the instant case, as LWCC always refused to pay. R.S. 23:1201.2, as amended. For failure to pay benefits within 60 days of written notice, a penalty and attorney fees may be assessed unless "the claim is reasonably controverted" or if such nonpayment results from conditions over which the payor had no control. R.S. 23:1201 F(2), as amended.
[4] The WCHO actually found that the relevant medical evidence proved he could still do light duty work. She nevertheless awarded temporary, total benefits. R. p. 178.
[5] We have also analyzed whether Cleveland might be entitled to the alternative relief of Supplemental Earnings Benefits, R.S. 23:1221(3). In his claim form, he declared that he was earning $4.50 an hour, or minimum wage. With the finding that he can perform light duty work, we note that Cleveland offered no evidence to prove that his light-duty status renders him unable to earn 90% of his pre-injury wages. § 1221(3)(a). We therefore find that SEB is not warranted. Mitchell v. AT & T, supra.