717 So.2d 1230 (1998)
Sammy LEE, Plaintiff-Appellee,
v.
BANCROFT BAG, INC., Defendant-Appellant.
No. 30820-WCA.
Court of Appeal of Louisiana, Second Circuit.
August 19, 1998.
*1231 Crawford & Anzelmo by Neal L. Johnson, Jr., Monroe, for Defendant-Appellant.
Street & Street by D. Randolph Street, Monroe, for Plaintiff-Appellee.
Before STEWART, GASKINS and PEATROSS, JJ.
PEATROSS, Judge.
In this worker's compensation action, Bancroft Bag, Inc. ("Bancroft") appeals a judgment ordering it to pay medical bills incurred by claimant Sammy Lee ("Lee") when he was admitted to St. Francis Medical Center on two occasions in November 1996. Lee answers, urging that the hearing officer erred in awarding Bancroft a credit for amounts previously paid by Lee's private insurer and in not awarding penalties and attorney fees. We amend the judgment and affirm the judgment as amended.

FACTS
This action arose out of an accident sustained by Lee while in the course and scope of his employment at Bancroft on June 27, *1232 1994. Lee suffered nerve root displacement and a ruptured disc in the accident and was subsequently treated for the injury by several physicians, including orthopaedics Dr. Frank Cline and Dr. Douglas Brown. In January 1996, Dr. Cline referred Lee to Dr. Don Irby, a neurosurgeon, with whom Lee sought treatment throughout 1996.
On two occasions in November 1996, Lee was admitted to St. Francis Medical Center ("St.Francis"). Lee testified that, on November 20, 1996, he was bending over attempting to put on his work boots and his back "went out," rendering him unable to walk. He was admitted to St. Francis later that day with the chief complaint of back pain. After his release, Lee continued to experience difficulty with his back and was again admitted a few days later with an admission diagnosis of low back pain and disc herniation.
On his first admission to St. Francis, Lee was examined by an emergency room physician. Due to Lee's complaints of severe pain in his back and chest, the physician consulted with Dr. Duke McHugh, a gastroenterologist. Dr. McHugh performed tests to determine if any gastroenterological problems were the source of Lee's complaints. Dr. McHugh also ordered Lee to undergo an MRI of the lumbar, thoracic and cervical spine.
An adjuster with Bancroft's third-party administrator subsequently conducted a "utilization review" of the St. Francis bills to determine whether the treatment received by Lee during the November admissions was related to his on-the-job accident. Bancroft eventually paid a portion of the bills, paying $1,234 to St. Francis and $238 to Radiology Associates. Bancroft deemed the remainder of the expenses, which were incurred in connection with gastrointestinal, thoracic spine and cervical spine testing, to be unrelated to Lee's work injury and, therefore, refused to pay these charges.
Prior to the hearing on the matter, Bancroft stipulated that Lee sustained a work-related accident on or about June 27, 1994, which resulted in injuries to his back, and that Lee was being paid compensation benefits. Additionally, Lee withdrew his surgery request pending further medical recommendations. The only issues before the hearing officer, therefore, were (1) whether the medical bills incurred by Lee in connection with the two 1996 admissions to St. Francis were compensable and (2) whether penalties and attorney fees were owed by Bancroft for the non-payment of those bills.
After a hearing on the merits, the hearing officer ordered Bancroft to pay the outstanding bills, allowing Bancroft a credit for any amounts paid by Lee's private insurer. Lee's request for penalties and attorney fees was denied.
Bancroft appeals, asserting one assignment of error. Lee answers, asserting two assignments of error.

DISCUSSION

Medical Expenses
In its only assignment of error, Bancroft urges that the hearing officer committed manifest error in finding it liable for the medical bills incurred pursuant to Lee's November 1996 admissions to St. Francis. Bancroft argues that those bills which it refused to pay were for testing that was unrelated to Lee's work injury and that it is responsible for only those medical expenses related to Lee's on-the-job injury.
In the event of a compensable injury, the employer is obligated to furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of the State as legal. LSA-R.S. 23:1203(A). The worker claiming medical benefits must prove by a preponderance of the evidence the necessity and relationship of the treatment to the work-related accident. Jackson v. Creger Automotive Co., Inc., 29,249 (La.App.2d Cir.4/2/97), 691 So.2d 824; Chitman v. Davison Trucking, 28,073 (La. App.2d Cir.2/28/96), 669 So.2d 671.
A physician who is treating a worker's compensation claimant may seek whatever consultations are medically necessary to determine the claimant's course of treatment for the effect of the injuries received in the work accident. Bailey v. Smelser Oil & Gas, Inc., 620 So.2d 277 (La.1993); Whittington v. Rimcor, Inc., 601 So.2d 324 (La.App. 2d Cir. 1992), writ denied, 605 So.2d 1366 (La.1992). *1233 Diagnostic tests which treating or consulting physicians deem necessary in order to make a definitive diagnosis or recommendation for treatment are part of the necessary medical treatment which the employer and its insurer are obligated to furnish to injured workers. Chevalier v. L.H. Bossier, Inc., 617 So.2d 1278 (La.App. 3rd Cir.1993). See also Jackson, supra.
The hearing officer's determinations as to whether the worker's testimony is credible and whether the worker discharged the burden of proof are factual findings governed by the manifest error rule. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706; Chitman, supra.
Bancroft acknowledges the above-stated jurisprudential rule that an employer is responsible for all medical costs incurred in achieving a proper diagnosis of a claimant's work-related injuries. Bancroft argues, however, that this case is distinguishable from the line of cases rendering such holdings. The first distinction, Bancroft contends, is that those cases all involved situations in which the claimant's "treating physician" ordered specific testing or evaluation. Bancroft urges that the emergency room physician was not Lee's "treating physician" for his back injury. Bancroft maintains that a proper diagnosis of "low back injury" had been reached concerning Lee's on-the-job injury and that no further testing was necessary.
Bancroft further contends this case to be distinguishable from those espousing the above-discussed jurisprudential rule because none of those cases involved a situation wherein diagnostic tests were recommended to test/diagnose longstanding, preexisting health problems of the claimant. Bancroft stresses that Lee's medical records show that, as early as 1990, he had gastrointestinal and chest problems and had previously complained of the same symptoms that prompted the testing ordered at St. Francis.
We find the hearing officer properly rejected Bancroft's arguments on this issue. The hearing officer found that Lee's work-related injury prompted his admission to St. Francis on both occasions in November 1996. Lee's testimony supports this finding, as do the hospital records indicating Lee's chief complaint on his first admission was "back pain" and his diagnosis on the second admission was "low back pain, disc herniation." The hospital records further indicate that the emergency room physician ordered a consultation with Dr. McHugh in response to Lee's complaints of back pain. The gastrointestinal, thoracic spine and cervical spine testing was ordered by Dr. McHugh to determine if any gastrointestinal pathology could account for Lee's pain. The hearing officer did not err, therefore, in concluding that the testing and procedures were medically necessary emergency care required to determine the course of Lee's treatment for his back injury.
Regarding Bancroft's specific argument that the emergency room doctor was not a "treating" physician of Lee's, we disagree. Lee presented at the hospital with complaints of back and chest pain. The attending emergency room physician administered treatment to Lee, prescribing pain medication and ordering additional consultation and testing. We agree with the hearing officer that, under these circumstances, the emergency room physician was "treating" Lee when he ordered the consultation and testing.
We likewise find no merit in Bancroft's argument that, because Lee had preexisting gastrointestinal and chest problems, Bancroft is not responsible for the gastrointestinal, thoracic spine and cervical spine testing. The record does not indicate that any preexisting problems other than his work-related injury caused the pain prompting Lee's two admissions in November 1996 when the testing was ordered. After this period of hospitalization, Lee did not receive any treatment for any condition other than his work-related back injury. Under these circumstances, we find the hearing officer did not err in ordering Bancroft to pay the expenses related to the testing. This argument is without merit.

Penalties and Attorney Fees
Lee asserts as error that the hearing officer erred in failing to award penalties and attorney fees against Bancroft for its failure to provide him with medical treatment and pay his medical bills.
*1234 At the time of Lee's work-related injury, LSA-R.S. 23:1201.2 provided for attorney fees when the failure to pay benefits was found to be "arbitrary, capricious, or without probable cause" and LSA-R.S. 23:1201 authorized a penalty for the payor's failure to pay benefits when the right to benefits was not "reasonably controverted" by the payor. See LSA-R.S. 23:1201.2 and 23:1201 prior to 1995 amendment.[1] Reasonably controverting a claim means that the payor has factual or medical information of such a nature that it reasonably counters that provided by the claimant. Cleveland v. Delhi Guest Home, 29,506 (La.App.2d Cir.5/7/97), 694 So.2d 607; Davis v. Jones Baldwin Music Co., 27,545 (La.App.2d Cir.11/1/95), 662 So.2d 803.
The attorney fee and penalty provisions are penal in nature and must be strictly construed, allowing recovery only in cases where the facts negate probable cause of nonpayment. Cleveland v. Delhi Guest Home, supra; Stevens v. Wal-Mart Stores, Inc., 27,977 (La.App.2d Cir.11/1/95), 663 So.2d 543. A hearing officer has great discretion in deciding whether to allow or disallow attorney fees. Jackson, supra; Stevens, supra. Absent manifest error, a hearing officer's decision to award penalties and attorney fees will not be disturbed. Taylor v. Garrett, 28,729 (La.App.2d Cir.10/30/96), 682 So.2d 831.
In addressing Lee's claim for penalties and attorney fees, the hearing officer noted that Lee's work-related injury involved a back injury. In rejecting Lee's request for penalties and attorney fees, the hearing officer stated that the actions of Bancroft "were reasonable when they controverted a request for payment for testing concerning his heart and gastrointestinal problems."
As stated above, the attorney fee and penalty provisions are penal in nature and must be strictly construed. Cleveland, supra. Based on our consideration of the record, as well as the fact that the hearing officer's determination is to be given great deference, we conclude that there is a reasonable factual basis for the hearing officer's denial of attorney fees and penalties. We cannot say the hearing officer was manifestly erroneous in concluding that Bancroft reasonably controverted the claim and was not arbitrary and capricious in its refusal to pay. This assignment of error is without merit.

Medical Expense Offset
Lee also asserts that the hearing officer erred in granting Bancroft a credit for the medical bills paid by Lee's private health insurer.
LSA-R.S. 23:1212 provides, in pertinent part:
Payment by any person or entity, other than a direct payment by the employee, a relative or friend of the employee, of medical expenses that are owed under this Chapter shall extinguish the claim against the employer or insurer for those medical expenses.... If the employee or the employee's spouse actually pay premiums for health insurance, either as direct payments or as itemized deductions from their salaries, then this offset will only apply in the same percentage, if any, that the employer of the employee or the employer of his spouse paid the health insurance premiums.
Lee argues that Bancroft bore the burden of proving entitlement to any credit. Lee further urges that, because Bancroft failed to raise its entitlement in its pleadings, any such right is waived.[2]
In Gentile v. Baton Rouge General Medical Center, 95-0348 (La.App. 1st Cir.11/9/95), *1235 665 So.2d 422, the first circuit addressed the issue of whether a defendant employer must assert its right to a credit against medical expenses under LSA-R.S. 23:1212. The court noted the general principle of La. C.C.P. art. 1005 which requires an extinguishment of an obligation "in any manner" to be set forth affirmatively in the answer as a defense. The court reached the conclusion, therefore, that an employer's failure to raise in its answer the issue of an entitlement to credit for payment of medical expenses precluded an award of offset. Likewise, In Alford v. Acadian Ambulance Service, Inc., 96-639 (La.App. 3rd Cir.11/6/96), 682 So.2d 942, the third circuit held that a defendant is not entitled to a credit under LSA-R.S. 23:1212 unless such entitlement is specifically pleaded in its answer.
We agree with the holdings of Gentile, supra, and Alford, supra. A claim for offset is an affirmative defense that must be specifically pleaded. See also Brown v. Vernon Sawyer, Inc., 25,959 (La.App.2d Cir.10/26/94), 645 So.2d 260 (addressing a claim for credit for excess temporary total disability benefits paid to claimant.) Since the record indicates that Bancroft failed to seek credit for the payment of medical expenses in its answer, the hearing officer improperly held Bancroft not liable for any amounts previously paid through Lee's private insurer. We therefore amend the judgment to delete that portion which held Bancroft not liable for any amounts previously paid through Lee's private insurer.

CONCLUSION
For the reasons discussed above, we amend the judgment to delete that portion decreeing Bancroft not liable for any amounts previously paid through Lee's private insurer. In all other respects the judgment of the hearing officer is affirmed. Costs are assessed to Bancroft.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] The penalty and attorney fee provisions were amended by La. Acts 1995, No. 1137. For accidents occurring on or after June 29, 1995, penalties and attorney fees are allowed for the payor's failure to pay benefits unless the claim was reasonably controverted or the nonpayment resulted from conditions over which the payor had no control. See LSA-R.S. 23:1201(F)(2), as amended. When the payor discontinues benefits, attorney fees are allowed if the discontinuance was "arbitrary, capricious, or without probable cause." See LSA-R.S. 1201.2, as amended.
[2] Additionally, Lee contends that any entitlement Bancroft may have to any medical expense offset would be through an application of the section of LSA-R.S. 23:1212 which provides that the offset applies in the percentage in which the employer paid the insurance premiums. Due to our resolution of the offset issue, discussion of this argument is unnecessary.