724 So.2d 797 (1998)
Dwayne SCHERER, Plaintiff-Appellant,
v.
INTERIOR PLANT DESIGN, Defendant-Appellee.
No. 98-702.
Court of Appeal of Louisiana, Third Circuit.
October 28, 1998.
Rehearing Denied January 6, 1999.
*798 Lawrence N. Curtis, Lafayette, for Dwayne Scherer.
H. Douglas Hunter, Opelousas, for Interior Plant Design.
*799 Before DECUIR, AMY and PICKETT, JJ.
AMY, Judge.
The plaintiff filed suit against his employer, seeking reinstatement of temporary total disability benefits and payment of certain medical expenses. Additionally, he sought penalties and attorney's fees. Following judgment for his employer, the plaintiff perfected this appeal. We affirm.

Factual and Procedural History
This is a workers' compensation matter. The plaintiff, Dwayne Scherer, injured his lower back on or about December 1, 1994, while working for the defendant, Interior Plant Designs (IPD), when the overhead door of a van fell on his head. While the parties do not dispute the fact that this accident occurred while Mr. Scherer was in the course and scope of his employment with IPD, they do dispute the extent of Mr. Scherer's injuries and what effect, if any, this employment injury has had on Mr. Scherer's preexisting HIV condition. Additionally, Mr. Scherer contends that IPD was "arbitrary and capricious" in handling his claim, and should, therefore, have penalties and attorney's fees assessed against them.
Based upon the medical evidence presented, the workers' compensation judge found Mr. Scherer to be capable of employment. Consequently, she found IPD had "correctly converted Scherer's benefits from temporary, total disability to supplemental earnings benefits." Because she could find no causal relation between the employment accident and Mr. Scherer's preexisting HIV condition, the workers' compensation judge held that IPD was not responsible for the medical expenses associated with treatment for this condition by the plaintiff's treating physician, Dr. Ernest Wong. And due to IPD's "reasonable controversion" of the claim and the finding that it acted reasonably, the workers' compensation judge denied Mr. Scherer's request for penalties and attorney's fees.
Mr. Scherer appeals from this judgment and presents the following assignments of error for our review:
(1) The administrative hearing officer erred in failing to award temporary total disability benefits.
(2) The administrative hearing officer erred in failing to order payment of the expenses associated with Dr. Wong's treatment.
(3) The administrative hearing officer erred in refusing to award penalties and attorney's fees.

Discussion

Mr. Scherer's Medical History
By way of background, several doctors have been treating Mr. Scherer for his various conditions over the past few years. Dr. Louis Blanda, an orthopedic surgeon, treated Mr. Scherer initially for his employment injury and performed surgery on him on July 31, 1995. Subsequently, Dr. Blanda referred Mr. Scherer to Dr. Daniel Hodges, who specializes in physical medicine and rehabilitation. During the course of his treatment of Mr. Scherer, Dr. Hodges prescribed drugs for Mr. Scherer's anxiety and depression. He also ordered a functional capacity evaluation (FCE) to be conducted on Mr. Scherer and referred him to vocational rehabilitation case management. Mr. Scherer was also treated by Dr. Jimmie D. Cole, a clinical psychologist, for anxiety and depression. This treatment was conducted primarily through the Coping Skills program. Additionally, Dr. William Cloyd, a psychiatrist, saw Mr. Scherer once, during which time he performed a psychiatric evaluation, finding him to be suffering from a "significant depressive disorder." He recommended that Mr. Scherer seek "regular psychiatric counseling" and that he continue taking his antidepressant medication. Dr. Scott Gammel, a pain management specialist, also treated Mr. Scherer and prescribed medication for his pain. However, shortly after he began treatment with Dr. Gammel, Mr. Scherer sought treatment with Dr. Hubbel because the medicine prescribed by Dr. Gammel was allegedly making Mr. Scherer ill. Finally, Dr. Ernest Wong and his partner Dr. Richard Fei have been treating Mr. Scherer for both his depression and his HIV condition.

*800 Entitlement to TTD Benefits
Mr. Scherer urges that he should not be required to work until he has completed the chronic pain treatment recommended by Dr. Blanda and Dr. Hodges. He contends that this constitutes "necessary medical treatment" and that IPD should continue paying temporary total disability (TTD) benefits until he has received this treatment. He analogizes his situation to that presented in Chevalier v. L.H. Bossier, Inc., 617 So.2d 1278 (La.App. 3 Cir.1993), and submits that the hearing officer was "clearly wrong" in finding him to be capable of some form of employment.
Conversely, IPD urges that the hearing officer was reasonable in concluding that Mr. Scherer is not entitled to TTD benefits. IPD seeks to distinguish the present case from Chevalier by urging that here, Mr. Scherer is presently capable of returning to work, whereas Chevalier involved an indefinite recovery period. IPD further focuses on the testimony of Mr. Scherer's treating physicians, all of whom opine that Mr. Scherer is capable of engaging in some form of employment, and, furthermore, that employment would likely help combat his depression.
In her Reasons For Judgment, the workers' compensation judge evaluated the medical evidence presented, including Mr. Scherer's doctors' opinions, as well as the FCE performed on Mr. Scherer and the vocational rehabilitation results. She concluded that Mr. Scherer was, indeed, capable of engaging in some form of employment. Accordingly, the workers' compensation judge found Mr. Scherer to be entitled to supplemental earnings benefits (SEB) rather than TTD benefits. Upon review of the record, we affirm this determination.
For an employee to establish entitlement to TTD benefits, he or she must prove "by clear and convincing evidence, unaided by any presumption of disability, that [he or she] is physically unable to engage in any employment or self-employment...." La.R.S. 23:1221(1)(c). The burden of proving the existence of a fact by clear and convincing evidence requires that its existence must be "highly probable, that is, much more probable tha[n] its non-existence." Comeaux v. Sam Broussard Trucking, 94-1631, p. 8 (La.App. 3 Cir. 5/31/95); 657 So.2d 449, 454, quoting Succession of Bartie, 472 So.2d 578, 582 (La.1985). There must be objective medical evidence of the employee's disability to satisfy La.R.S. 23:1221(1)(c)'s standard of clear and convincing evidence. Id. An employee's disability status is a legal question, with the determination of disability being made after evaluating all lay and medical testimony. Fritz v. Home Furniture-Lafayette, 95-1705 (La.App. 3 Cir. 7/24/96); 677 So.2d 1132 citing Walker v. Halliburton Services, Inc., 93-722 (La.App. 3 Cir. 3/1/95); 654 So.2d 365, writ denied, 95-1507 (La.9/22/95); 660 So.2d 481. This is a factual finding and, therefore, the workers' compensation judge's determination is subject to the manifest error-clearly wrong standard of review. Id.
Entitlement to SEB benefits involves shifting burdens of proof. Initially, the employee must prove his inability to earn ninety percent of the wages he was earning at the time of his injury by a preponderance of the evidence. La.R.S. 23:1221(3)(a); Comeaux, 94-1631; 657 So.2d 449. Once the employee establishes his prima facie case, the employer must then prove that the employee is capable of earning more wages than he is presently earning. This can be established by demonstrating by a preponderance of the evidence that the employee is, in fact, physically capable of engaging in a specific type of employment and that the job was either "offered or tendered by the employer or any other employer," or the job "is proven available to the employee in the employee's or employer's community or reasonable geographic region." La.R.S. 23:1221(3)(c)(i); Id. The employee may then prove his incapacity of engaging in that employment "if [he or she] establishes by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, [he or she] cannot perform employment offered, tendered, or otherwise proven to be available to him...." La.R.S. 23:1221(3)(c)(ii); Id.
Prior to October 1, 1996, Mr. Scherer was receiving TTD benefits. However, Employer's Exhibit 9, admitted in evidence, is a form reclassifying Mr. Scherer's benefits from *801 TTD to SEB. When asked to explain the change from TTD to SEB benefits, Ms. Kathleen Bates, a claims representative from National Loss Control Management in charge of handling Mr. Scherer's claim, testified as follows: "In later September '96, the patient had reached MMI according to Dr. Hodges, and we re-classed his benefits from TTD to SEB, which is a monthly pay."
Several of Mr. Scherer's treating doctors feel that he is capable of performing some type of work. In Dr. Hodges' Progress Note from a February 22, 1996 exam, which was relied upon by IPD in re-classifying Mr. Scherer's benefits from TTD to SEB, he stated that he had received Mr. Scherer's FCE and that "[h]e is basically limited to light duty capacity. At this point, I feel he is capable of returning to this level of activity and he is being released.... He is at maximum medical improvement." When asked by IPD's attorney during his deposition what Mr. Scherer's "final restrictions" were, Dr. Blanda testified as follows:
I thought that the patient could probably do sedentarial light duty type work. And again, this is strictly based on the post-operative scans and CT and MRI that showed that the disc had resolved. And although he still had some subjective complaints I didn't think it would hurt him to do light duty.
Mr. Scherer's psychologist, Dr. Cole, wrote Dr. Blanda a letter in which he discussed Dr. Hodges' release of Mr. Scherer to light duty and stated:
Psychologically, I think it would be an excellent idea for the patient to get back to some type of activity and that would be encouraged. I also think the patient could benefit from some additional individual psychotherapy to deal with the multiple stressors that he is facing.
Following up on the suggested need for continued psychotherapy, the following question was posed to Dr. Cole in a questionnaire from Strategic Case Management: "Should he require other counseling services, would it be appropriate for Mr. Scherer to receive these services in conjunction with returning to work?" Dr. Cole responded affirmatively. Additionally, Dr. Cloyd, the psychiatrist who examined Mr. Scherer, stated in his deposition that he felt Mr. Scherer was mentally capable of returning to work at a "light duty" level, but from a physical standpoint, he would defer to those doctors treating Mr. Scherer's physical condition. Further, in Dr. Cloyd's "Addendum to Report Dated March 14, 1996," he states that "[w]hile Mr. Scherer does have significant depressive symptomatology, I do not feel that it is sufficient from a mental standpoint to interfere with his doing some type of work."
We will first address the issue of Mr. Scherer's entitlement to TTD benefits. Regarding Mr. Scherer's Chevalier argument, we find the present case distinguishable. Whereas Mr. Chevalier's doctors had "placed significant restrictions on his activities[,]" Chevalier, 617 So.2d at 1285, Mr. Scherer's doctors feel that he can, and, furthermore, probably should, work. It is, therefore, apparent that Mr. Scherer has failed to satisfy his burden of proving his inability to work by clear and convincing evidence. Rather than providing objective medical evidence of his disability, the medical evidence presented indicates that Mr. Scherer is, in fact, capable of engaging in some form of employment.
We now turn to the issue of SEB benefits. Since IPD does not contest Mr. Scherer's entitlement to these benefits, as demonstrated by their voluntary payment of SEB, Mr. Scherer's prima facie case under La.R.S. 23:1221(3)(a) has been established. See Fortune v. Charbonnet-Labat Funeral Home, 95-1954 (La.App. 4 Cir. 3/14/96); 671 So.2d 988. IPD, however, has submitted as evidence Employer's Exhibits 5 and 6, which describe available jobs that it contends Mr. Scherer is both qualified to perform and physically capable of performing. Moreover, at trial, Mr. Mark D. Cheairs, a vocational rehabilitation consultant, testified that he had sent Mr. Scherer a letter notifying him of available jobs he had located. He further testified that Mr. Scherer has not followed-up on any of those jobs. We note that Mr. Scherer has not countered with clear and convincing evidence that he is unable to perform those jobs offered him due to substantial pain.
*802 Because Mr. Scherer has failed to prove his inability to work by clear and convincing evidence, TTD benefits are unavailable to him. However, Mr. Scherer has established his entitlement to SEB. Accordingly, we affirm the hearing officer's determination that IPD's re-classification of Mr. Scherer's benefits from TTD to SEB was proper.

Dr. Wong's Treatment
In brief, Mr. Scherer urges that "Dr. Wong's treatment is clearly reasonable and necessary within the meaning of the Worker's Compensation Act." In support of this proposition, Mr. Scherer states that his work-related accident, in combination with the attendant pain that he claims to have suffered, "[has] the potential for exacerbating it [the HIV condition] to the point of becoming fatal."
IPD, however, urges that Dr. Wong is treating Mr. Scherer for HIV, in this case, a condition completely unrelated to the employment-related accident. Furthermore, IPD submits that Mr. Scherer's HIV condition has actually improved, rather than worsened, as Mr. Scherer suggests could happen.
In her Reasons For Judgment, the workers' compensation judge found "no demonstrable causal effect" between Mr. Scherer's preexisting HIV condition and the employment-related accident. To support this finding, the workers' compensation judge noted that Mr. Scherer's HIV condition has improved, as his T-4 count has increased, although he does continue to experience depression. She, therefore, concluded that the employment accident has not aggravated Mr. Scherer's HIV condition.
When an employee has a compensable injury under the Workers' Compensation Act, the employer has the duty of providing "all necessary drugs, supplies, hospital care and services, [and] medical and surgical treatment...." La.R.S. 23:1203(A); See also Cleveland v. Delhi Guest Home, 29,506 (La.App. 2 Cir. 5/7/97); 694 So.2d 607. Treatment necessary to alleviate pain suffered by the employee due to his disability is included. Barry v. Western Elec. Co., Inc., 485 So.2d 83 (La.App. 2 Cir.), writ denied, 487 So.2d 441 (La.1986). The plaintiff must prove the necessity of the treatment and the causal connection between the treatment and the employment-related accident by a preponderance of the evidence. Cleveland, 29,506; 694 So.2d 607. The issues of necessity of treatment and causal relationship are questions of fact; accordingly, the applicable standard of review regarding the hearing officer's findings is manifest error-clearly wrong. Alleman v. Fruit Of The Loom-Crowley, 96-1246 (La.App. 3 Cir. 3/5/97); 692 So.2d 485. Aggravation or exacerbation of a preexisting injury is compensable under the workers' compensation system. Chevalier, 617 So.2d 1278.
At trial, both Mr. Scherer and IPD stipulated that Mr. Scherer was involved in an accident on December 1, 1994, arising out of and in the course of his employment with IPD. Accordingly, the parties' rights and obligations are governed by the Workers' Compensation Act. See La.R.S. 23:1031(A). The record reveals that Mr. Scherer suffered orthopedic injury as a result of this accident. In his deposition, Dr. Blanda described the injury as follows: "The lumbar spine did show a central herniation of the disc with a slight right-sided protrusion at the L4-5 level." Blood tests performed on Mr. Scherer prior to his scheduled surgery indicated he was HIV positive. Dr. Blanda performed an automated percutaneous discectomy on Mr. Scherer, a less invasive procedure than originally had been planned, but referred Mr. Scherer to Dr. Wong for treatment of his HIV before this surgery was conducted. According to Dr. Wong's testimony, Mr. Scherer was exposed to the disease prior to 1982. The employment accident occurred in 1994. Therefore, Mr. Scherer's HIV status constitutes a preexisting condition. The record also reveals that Mr. Scherer has been experiencing depression. He has been treated for this condition by Dr. Cloyd and Dr. Cole, and, additionally, he has received in-patient treatment at Charter Cypress Hospital.
Essentially, Mr. Scherer's argument is that he suffers from depression as a result of his employment injury. In turn, he urges that this depression has the potential for exacerbating his preexisting HIV condition. He, therefore, seeks to have IPD pay the *803 costs associated with Dr. Wong's treatment. The workers' compensation judge noted that "not one doctor has been able or willing to separate the components contributing to Scherer's mental health status."
In his deposition, when Mr. Scherer's attorney asked Dr. Wong whether Mr. Scherer's depression had been caused by his employment-related injury and its accompanying pain, the doctor testified, "I think, yes, the pain is probably more a component than anything."
Dr. Cloyd testified as follows when asked whether he could apportion the causes of Mr. Scherer's depression between his employment injury and his HIV condition:
Now, I would have to say that predominantly more than fifty percent (50%) of it was due to the changes in his physical state. Okay, the HIV is present. He knows it is present. But the main thing, I think, is the change in his functioning, and that would be related to, of course, the physical changes that have occurred in him at present.
When asked by IPD's attorney whether Mr. Scherer's HIV condition could have caused his depression, Dr. Hodges testified that Mr. Scherer "seemed to have, retrospectively, knowing the HIV status now, anxiety and depression out of the scope of what you would see in a post-op back patient." Dr. Hodges further testified that Mr. Scherer's depression "did seem a bit above the norm," with "the norm" referring to patients who had undergone the same type of surgical procedure as did Mr. Scherer. However, when questioned about the cause of Mr. Scherer's depression by Mr. Scherer's attorney, Dr. Hodges stated that he could not separate out the various factors causing Mr. Scherer's depression.
Although there may be a causal connection between the employment-related accident and Mr. Scherer's depression, the trial court found no causal link between the work-related accident and Mr. Scherer's HIV condition. A review of the medical testimony of Mr. Scherer's treating physicians supports this finding.
At Dr. Blanda's deposition, the following exchange occurred between defense counsel and Dr. Blanda:
Q Doctor, is there any evidence from an orthopedic standpoint or any opinion that you may have that his orthopedic problems could have made his HIV-related problem any worse?
A No, I don't think there's any association there.
Q Would you defer to the specialist in that regard?
A Sure.
Later in the deposition, defense counsel again questioned Dr. Blanda about the possibility of Mr. Scherer's orthopedic injuries having aggravated his HIV condition. Dr. Blanda responded by testifying, "from an orthopedic standpoint I've not seen any literature indicating any association at all, unless the patient is really so weakened by the HIV that routine things may cause him injury." Dr. Blanda did seemingly defer to Dr. Wong, however, by stating, "I am not really up on the medical aspects of HIV [sic] thoroughly as one such as Dr. Wong might be who specializes in treatment of these things."
During Dr. Wong's deposition, counsel for IPD questioned him about the potential effect of depression on Mr. Scherer's HIV condition. Dr. Wong testified that "[d]epression is one of single [sic] impediments to recovery in terminal illness." When further questioned about the status of Mr. Scherer's HIV condition, however, Dr. Wong testified that Mr. Scherer's T-4 count has increased since he began treatment with Dr. Wong.[1] He further testified, however, that while they were "quantitatively" good T-4 cells, they were not "qualitatively" good cells.[2] Accordingly, *804 we find no error in the workers' compensation judge's determination that there is no connection between Mr. Scherer's HIV condition and his employment accident. As noted by the workers' compensation judge, Mr. Scherer's HIV condition appears to have improved, as is evidenced by the increase in T-4 cell count. Based upon the evidence presented, Mr. Scherer has failed to satisfy his burden of proving a causal relationship between the employment accident and his treatment by Dr. Wong. The workers' compensation judge correctly found IPD to have no responsibility for expenses associated with Dr. Wong's treatment.

Penalties And Attorney's Fees
Mr. Scherer in brief contends that IPD's alleged failure to pay certain medical expenses and its "handling" of others "clearly support[s] awards of penalties and attorney's fees." Conversely, IPD submits that it did not act arbitrarily or capriciously, and that Mr. Scherer's claim was "reasonably controverted," as some issues of causation pertinent to the compensability of certain medical expenses existed.
The workers' compensation judge denied Mr. Scherer's request for penalties and attorney's fees, as she found that IPD "acted very reasonably, and presented a reasonable controversion of this claim." The workers' compensation judge noted that IPD "reasonably relied on statutory authority" in its denial of certain medical treatment. Additionally, when IPD was advised that Mr. Scherer needed to undergo psychiatric treatment in addition to the psychological counseling he was receiving, it authorized a visit with a psychiatrist. Mr. Scherer, however, failed to keep two scheduled appointments.
The law governing workers' compensation matters is that which is in effect at the time of the employee's injury. Breaux v. Hernandez, 96-882 (La.App. 3 Cir. 2/5/97); 689 So.2d 587. Since Mr. Scherer's injury occurred on or about December 1, 1994, the applicable law is that which was in effect prior to the 1995 revision of the Workers' Compensation Act.[3]
"A hearing officer is afforded great discretion in awarding penalties and attorney's fees." Alleman, 96-1246, p. 9; 692 So.2d 485, 490, citing Miller v. Byles Welding & Tractor Co., 96-164 (La.App. 3 Cir. 6/5/96); 676 So.2d 665. Further, a hearing officer's award of penalties and attorney's fees is subject to the manifest error-clearly wrong standard of review. Id.
We find no manifest error in the workers' compensation judge's determination that the employer presented a "reasonable controversion" of Mr. Scherer's claim and acted in a *805 reasonable manner. The evidence presented indicates IPD was reasonable in its conversion of Mr. Scherer's benefits from TTD to SEB, as Mr. Scherer appears to be capable of engaging in employment, and, furthermore, he did not prove his incapacity by clear and convincing evidence. Additionally, although IPD did contest its responsibility for certain medical expenses, it was reasonable in doing so, as issues of causation regarding Mr. Scherer's HIV condition did exist. In summary, we affirm the workers' compensation judge's denial of penalties and attorney's fees.

DECREE
For the foregoing reasons, we affirm the judgment of the workers' compensation judge in all respects. All costs of this appeal are assigned to the plaintiff, Dwayne Scherer.
AFFIRMED.
NOTES
[1] In explaining the significance of the T-4 count, Dr. Wong stated, "if the T-4 count, or T-hemocele count, the same thing, reach a level under 200, we arbitrarily call it AIDS for epidemiologic studies.... So any time your course or treatment of natural history [sic] a T-4 count is under 200, that is by definition AIDS."
[2] Dr. Wong elaborated on his opinion that the T-4 cells were not "qualitatively" good ones by stating, "these are not good trained T-cells...." "[The cells do not] impart any immediate protection. As a matter of fact, some of the more exotic infections occurred the first three (3) or four (4) months after the T-4 count improved."
[3] Regarding penalties, La.R.S. 23:1201(E) stated:

If, pursuant to this Chapter, any compensation or medical benefits payable without an order is not paid within the time period provided in Subsections (B), (C), or (D) of this Section, there shall be added to such unpaid compensation a penalty of an amount equal to twelve percent thereof or a total penalty of not more than fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid, whichever is greater, which shall be paid at the same time as, and in addition to, such compensation, unless such nonpayment results from conditions over which the employer or insurer had no control.... Whenever the employee's right to such compensation or medical benefits has been reasonably controverted by the employer or his insurer, the penalties set forth in this Subsection shall not apply. The twelve percent or fifty dollars per calendar day, whichever is greater, additional payment shall be assessed against either the employer or the insurer, depending upon who was at fault in causing the delay.... The total fifty dollar per calendar day penalty provided for in this Subsection shall not exceed two thousand dollars in the aggregate.
(Emphasis added.)
The provision providing for attorney's fees, La. R.S. 23:1201.2 stated:
Any insurer liable for claims arising under this Chapter, and any employer whose liability for claims arising under this Chapter is not covered by insurance, shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due, to the payment of all reasonable attorney's fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, to payment of all reasonable attorney's fees for the prosecution and collection of the difference between the amount paid or tendered and the amount due.
(Emphasis added.)