737 So.2d 177 (1999)
Stuart BRISCOE, Plaintiff-Appellee,
v.
THERO-KINETICS, INC. and Louisiana Workers' Compensation Corporation, Defendants-Appellants.
No. 31,890-WCA.
Court of Appeal of Louisiana, Second Circuit.
May 5, 1999.
*178 Patricia L. Barfield, Baton Rouge, Counsel for Appellants.
Law Offices of Jack M. Bailey, Jr. by Eron J. Brainard, Shreveport, Counsel for Appellee.
Before PEATROSS, KOSTELKA, DREW, JJ.
PEATROSS, J.
Thera-Kinetics, Inc. and its workers' compensation carrier, Louisiana Workers' Compensation Corporation ("LWCC") appeal the decision of the Workers' Compensation Judge (WCJ) awarding Stuart Briscoe ("Plaintiff") past medical expenses; mileage; past Supplemental Earnings Benefits ("SEBs") at the rate of $307 per week from November 1, 1994, to December 31, 1994, for a total of $18,638; penalties of $2,000; and attorney fees of $5,000. Plaintiff answers the appeal asking for an increase in the SEBs and in the penalties and attorney fees. For the reasons stated herein, we affirm in part and reverse in part.

Facts
On June 16, 1993, Plaintiff was employed as an area manager for Thera-Kinetics, Inc. when he injured his right knee in the course and scope of his employment while lifting a large box. Plaintiff underwent arthroscopic surgery on his right knee on September 3, 1993, by orthopaedic surgeon, Dr. Craig Springmeyer. The following day, Plaintiff experienced severe back pain which radiated down his right leg. Since it was a weekend, Plaintiff went to the emergency room at Highland Clinic where he was given a Celestone injection by Dr. Springmeyer's partner, Dr. William Webb, who was on call at the time. On September 7, 1993, Plaintiff visited Dr. Springmeyer's office, still complaining of back pain. Dr. Springmeyer requested an MRI and a steroid drip. The steroid drip was never approved, but the MRI was done on September 21, 1993.
Dr. Springmeyer's records reflect a prescription for the narcotic, Lortab, being called in for Plaintiff on September 27, 1993. On September 29, 1993, Plaintiff sought treatment for his back pain from Ms. Grace Kitchell, who was recommended to him by his friend Carl Rice, a personal injury attorney. Plaintiff and Mr. Rice *179 were under the mistaken impression that Ms. Kitchell was a medical doctor because she held herself out as one, operating her "clinic" in a medical setting. Plaintiff sought treatment with Ms. Kitchell because, in his opinion, LWCC would not approve treatment for his back pain. On at least two occasions, Plaintiff received injections, which he believed to be vitamins and minerals, in his hip by a registered nurse on Ms. Kitchell's staff. There was conflicting testimony regarding in which hip Plaintiff received these injections. Plaintiff knew the formula contained in the injections was experimental and would not be covered by LWCC. After it was discovered that Ms. Kitchell was not a medical doctor, it was disclosed that the contents of the injections may have been steroids and/or amphetamines.
On October 1, 1993, two days after the first injection from Ms. Kitchell, Plaintiff was referred by Dr. Springmeyer to a neurosurgeon, Dr. Jorges Martinez, for further treatment of his back. This treatment was authorized by LWCC as either related to Plaintiff's original injury or as a result of the rehabilitation associated with his knee surgery. On October 5, 1993, Plaintiff underwent back surgery and Plaintiff received two pre-operative injections in his right hip.
In December 1993, Plaintiff began to complain to Dr. Springmeyer of pain in his right hip. The pain was later determined to be caused by an infection in his right hip. The infection was cultured and found to be Mycobacterium Chelonei,[1] which developed into an abscess requiring eight surgical excisions. Mycobacterium Chelonei is known as a noscomial infection which is associated with injections and manifests at the injection site.
Despite the confusion as to which hip Plaintiff received the injections from Ms. Kitchell, Carl Rice testified at trial that Plaintiff initially thought the injections from Ms. Kitchell caused the infection. Mr. Rice also directed one of his associates to assist Plaintiff in suing Ms. Kitchell, in proper person, for damages arising from the injections.
LWCC refused to pay for any treatment related to the abscess based on the assumption that the infection resulted from the unauthorized and illegal injections which Plaintiff received from Ms. Kitchell. This included the eight surgical excisions and the daily wound care which Plaintiff underwent.
LWCC paid temporary total disability benefits to Plaintiff from the date of the accident, September 3, 1993, through May 30, 1994, and SEBs from May 31, 1994, through October 31, 1994 because Plaintiff was fully released by Dr. Martinez on November 18, 1994, to return to his former job, subject to a 50-pound lifting restriction. Thera-Kinetics, Inc., however, had ceased doing business in the area and Plaintiff's former position had been abolished. Since his former job was no longer available, Plaintiff began employment with U.S. Ortho. No weekly benefits were paid after October 31, 1994, and LWCC had information Plaintiff intended to become self-employed in the same type position he had held with Thera-Kinetics, Inc.

DISCUSSION
We review the findings of fact by a WCJ under the "manifest error" standard. Doucet v. Baker Hughes Production Tools, 93-3087 (La.3/11/94), 635 So.2d 166. The issue is not whether the WCJ was right or wrong, but whether the factual conclusion was reasonable. Stobart v. State, Through DOTD, 617 So.2d 880 (La. 1993); Stevens v. Wal-Mart Stores, Inc., 27,977 (La.App.2d Cir.11/1/95), 663 So.2d 543. Mere conflicts in evidence will not suffice to overturn a WCJ's reasonable evaluations of credibility and reasonable findings of fact. Rosell v. ESCO, 549 So.2d 840 (La.1989); Stevens, supra. Thus, where there are two permissible views of the evidence, the fact finder's *180 choice between them cannot be manifestly erroneous or clearly wrong. Stobart, supra; Taylor v. Garrett, 28,729 (La. App.2d Cir.10/30/96), 682 So.2d 831.

Medical Expenses
La. R.S. art. 23:1203(A) provides in pertinent part:
In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal.... (Emphasis ours.)
LWCC and Thera-Kinetics, Inc. argue that the injections Plaintiff received from Ms. Kitchell were illegal care and any complications resulting therefrom are also illegal and not taxable to LWCC or Thera-Kinetics, Inc. Plaintiff does not ask for reimbursement of the cost of the injections from Ms. Kitchell, but only for those costs associated with treatment of the abscess, which he argues is not a result of the injections from Ms. Kitchell, but from the pre-operative injections he received prior to his back surgery.
A workers' compensation claimant must prove by a reasonable preponderance of the evidence the necessity and relationship of treatment provided by a physician to a work-related accident in order to be entitled to medical benefits. La. R.S. 23:1203(A); Balsamo v. Jones, 28,885 (La. App.2d Cir.12/11/96), 685 So.2d 1140. Proof by a preponderance means that the evidence, taken as a whole, makes the fact sought to be proved more probable than not. Balsamo, supra.
The record reflects very little evidence of the location of the injections which Plaintiff received from Ms. Kitchell. Plaintiff testified that he was wearing a TNS[2] unit at the time he received the injections from Ms. Kitchell's nurse and that the placement of the stimuli pads of the unit made it impossible for him to receive an injection in the right buttock without removing the unit or injecting through the stimuli pads, neither of which was done. There are no records available from Ms. Kitchell's office to prove or disprove his testimony since she destroyed all documentation associated with her "clinic" once she was ordered to cease practicing medicine without a license. Ms. Kitchell did testify during her deposition, however, that it was the practice of her nurses to alternate injection sites from right to left. Plaintiff testified to receiving injections on at least two occasions, once at the "clinic" and once at his home. Dr. Springmeyer testified, however, that even if all injections were given in the right buttock, you would have to consider all of them"you can not distinguish which one may have caused the abscess."
Given Dr. Springmeyer's testimony and the uncertainty of the placement of the injections from Dr. Kitchell, we cannot say that the WCJ was clearly wrong or manifestly erroneous. We find, therefore, that the treatment for the abscess is compensable because Plaintiff carried his burden in proving that the abscess was more probably than not, the result of the preoperative injections received by Plaintiff prior to his back surgery. See Dumas v. Hartford Insurance Co., 583 So.2d 31 (La. App. 4th Cir.1991). Thus, we affirm that portion of the judgment directing payment of all associated medical costs to be paid by LWCC.

Supplemental Earnings Benefits
La. R.S. 23:1221(3)(a) provides:
For injury resulting in the employee's inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able *181 to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in La. R.S. 23:1021(10).
Dr. Springmeyer testified, regarding Plaintiff's knee, that he was released to work without restrictions within six weeks of his surgery. Dr. Martinez testified that Plaintiff was released to return to work with a lifting restriction of 30 pounds in May 1994, and with lifting restrictions of 50 pounds in November 1994.
Plaintiff then endeavored to become self-employed in his own business, because his previous position had been eliminated. The record indicates that Plaintiff had been earning $60,000 per year at the time of his injury. Since Plaintiff's earnings in his own business were initially sporadic and actual income could not really be determined until the year's end, the WCJ, using the uncontroverted earnings amount which Plaintiff provided, calculated SEBs using an annual figure to determine if Plaintiff had met 90% of his income. The WCJ explained that this was necessary because at the beginning of the time period, Plaintiff may have been entitled to SEBs based upon the month's earning calculations; where as, at the end of the year, he may have in fact earned more than 90% of his annual income of $60,000. This was the case for 1996. In that year, some months indicate a negative income, where as other months indicate an income of triple his average monthly income. Plaintiff's total earnings for that year were in excess of $70,000. Obviously, it would not be fair to have paid Plaintiff SEBs in a period in which he earned well over 90% of his previous income. We find, therefore, that the WCJ was correct in awarding Plaintiff SEBs in the amount of the maximum rate of $307 per week for the period of November 1, 1994, to December 31, 1995.[3]

Penalties and Attorney Fees
A claimant is entitled to recover penalties and reasonable attorney fees in instances where an employer fails to timely pay medical or indemnity benefits, unless the claim is reasonably controverted. La. R.S. 23:1201 and 1201.2. The attorney fee and penalty provisions, however, are penal in nature and must be strictly construed, allowing recovery only in cases where the facts negate probable cause of nonpayment. Id.; Lee v. Bancroft Bag, Inc., 30,820 (La.App.2d Cir.8/19/98), 717 So.2d 1230; Cleveland v. Delhi Guest Home, 29,506 (La.App.2d Cir.05/07/97), 694 So.2d 607; Stevens v. Wal-Mart Stores, Inc., 27,977 (La.App.2d Cir.11/1/95), 663 So.2d 543.
Reasonably controverting a claim means that the employer or insurer has sufficient factual and medical information to reasonably counter that provided by the claimant. Douglas v. Kitchen Brothers Manufacturing, 30,637 (La.App.2d Cir.06/24/98), 715 So.2d 663; Cleveland v. Delhi Guest Home, supra. The source of Plaintiffs infection which resulted in the abscess was uncertain even up to the time of trial. In fact, Plaintiff filed suit against Ms. Kitchell in tort and Plaintiff's friend, Carl Rice, testified that Plaintiff believed the infection may have been caused by Ms. Kitchell's injections. Plaintiff's entitlement to SEBs was also questionable based upon Dr. Martinez' release and the incomplete information which LWCC received *182 initially concerning Plaintiff's actual earnings. We find, therefore, in light of the strict construction of the statute, that Plaintiff was not entitled to an award of penalties and attorneys fees and we reverse that portion of the judgment. See Cleveland v. Delhi Guest Home, supra.

DECREE
For the forgoing reasons, that part of the judgment of the Workers' Compensation Judge awarding medical benefits and Supplemental Earnings Benefits is affirmed; and that portion of the judgment awarding penalties and attorney fees is reversed. Costs are assessed equally to Thera-Kinetics, Inc. and Louisiana Workers' Compensation Corporation.
AFFIRMED IN PART and REVERSED IN PART.
NOTES
[1] This is apparently a site specific infection and not one that is systemic in nature.
[2] Transcutaneous Nerve Stimulator, used to help in the control of back pain.
[3] Plaintiff is entitled to the maximum of $307 per week because his average monthly income for a $60,000 year is $5,000 per month or $1162.80 per week based on a 4.3 week basis as prescribed in La. R.S.23:1221. Plaintiff would have to make $1,046 per week in order to meet 90% of his weekly income.